[No. A094519. First Dist., Div. Four. Oct. 30, 2002.]

WILLIAM YU et al., Plaintiffs and Respondents, v.
SIGNET BANK/VIRGINIA et al., Defendants and Appellants.

[No. A095102. First Dist., Div. Four. Oct. 30, 2002.]

WILLIAM YU et al., Plaintiffs and Appellants, v.
SIGNET BANK/VIRGINIA et al., Defendants and Respondents.

**COUNSEL**

The Sturdevant Law Firm, James C. Sturdevant, Mark T. Johnson; Law Office of William E. Kennedy and William E. Kennedy for Plaintiffs and Appellants and for Plaintiffs and Respondents.

Morrison & Foerster, James F. McCabe, Gregory P. Dresser and James R. McGuire for Defendants and Appellants and for Defendants and Respondents.

**OPINION**

**KAY, P. J.**—In *Yu v. Signet Bank/Virginia* (1999) 69 Cal.App.4th 1377 [82 Cal.Rptr.2d 304] (*Yu I*), we reversed a summary judgment entered for defendants Signet Bank/Virginia and Capital One Bank (collectively Banks) on causes of action in the second amended complaint of plaintiffs William and Darlene Yu for abuse of process, and unlawful and unfair business

practice (Bus. & Prof. Code, § 17200). In the present appeal by the Yus (A095102), we reverse the judgment entered for Banks on these causes of action after their demurrer to the third amended complaint was sustained without leave to amend. In Banks' appeal (A094519), we affirm the order denying their motion to strike the action under the anti-SLAPP (strategic lawsuit against public participation) statute (Code Civ. Proc., § 425.16; hereafter section 425.16).

## I. BACKGROUND

### A. *Our Prior Decision*

As described in *Yu I*, this lawsuit seeks to redress an improper debt collection practice of Virginia banks against California residents. The Yus accepted a credit card from Signet in 1989, used it to make purchases, and defaulted on repayments. Signet sued them on the debt in Virginia in 1994, obtained a default judgment, and served a "garnishment summons" on a Virginia office of William Yu's employer, with directions that it be forwarded to his place of employment in California. Mr. Yu's wages were garnished from November 1994 to May 1995 to satisfy the judgment. The Yus had no contact with Virginia other than their credit card with Signet.

The Yus filed this suit as a class action against Signet and its successor, Capital One, alleging that Banks' "long-arm program" of pursuing collection actions in Virginia against California credit card holders constituted "distant forum abuse," the practice of collecting consumer obligations by suing debtors in distant locations to deprive them of the opportunity to defend themselves. (*Yu I, supra,* 69 Cal.App.4th at p. 1389, citing Chen, *Due Process as Consumer Protection: State Remedies for Distant Forum Abuse* (1986) 20 Akron L.Rev. 9, 10-13.) ▮ Distant forum abuse is "unconscionable" (*Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94, 107 [101 Cal.Rptr. 745, 496 P.2d 817]) and "insidious" (Chen, *supra,* 20 Akron L.Rev. at p. 15) conduct employing "an ostensibly legitimate legal process to deprive consumers of basic opportunities which should be afforded all litigants" (*ibid*). "[M]isuse of the courts in this manner contributes to an undermining of confidence in the judiciary by reinforcing the unfortunate image of courts as 'distant' entities, available only to wealthy or large interests," and leads consumers "to conclude that the legal system is merely a 'rubber stamp' for the improper practices utilized by predatory agencies." (*Barquis v. Merchants Collection Assn., supra,* at p. 108, fn. omitted.) Thus, "courts have a strong interest in ensuring that [such] abuses of the legal process by collection agencies are not perpetuated." (*Ibid.*)

The Yus asserted causes of action for violations of due process and of California debt collection statutes, for intentional and negligent infliction of

emotional distress, and for abuse of process and unlawful business practice. Judgment was entered for Banks after their motion for summary judgment was granted. In *Yu I*, we reversed the judgment on the abuse of process and unlawful business practice claims, concluding that there were triable issues as to those claims under our Supreme Court's decision in the *Barquis* case.

To quote from our opinion in *Yu I, Barquis v. Merchants Collection Assn., supra*, 7 Cal.3d at page 98, "held that a creditor who files consumer debt collection actions in an improper venue, knowing that the venue is improper, for the purpose of impairing the debtors' ability to defend themselves, is guilty of 'a gross "abuse of process" ' and an ' "unlawful . . . business practice" ' within the meaning of what is now Business and Professions Code section 17200. In support of this conclusion, the court observed that the venue rules for relatively small claims stemmed from 'recognition of the serious potential for harassment that arises if a plaintiff, in a small monetary action, commences his action in a distant forum. . . . [D]efendants in such cases will often be financially unable to expend the money to travel to a distant forum, or to hire an attorney to do so, even simply to move for a change of venue. Without the protection of [the venue statute], a plaintiff, aware of these practical limitations, could exploit the situation by filing all such actions in distant counties where a defendant could not afford either to defend or to move for change of venue, and could thereby unfairly obtain default judgments or favorable settlements in such actions.' (7 Cal.3d at p. 118.) [¶] The practice of 'distant forum abuse' [citation] alleged in [the Yus'] case is even worse than the one condemned in *Barquis*, because the practice there involved suits in the wrong venue within California, whereas the practice here involves suits in the wrong *jurisdiction*—the even more distant forum of another state." (*Yu I, supra*, 69 Cal.App.4th at p. 1389.)

We held that the Yus' claims and supporting evidence "raise[d] triable issues of fact concerning [Banks'] knowledge and intent [under *Barquis*'s standards] which cannot be resolved on a motion for summary judgment." (*Yu I, supra*, 69 Cal.App.4th at p. 1390.) We concluded that the Virginia courts did not have personal jurisdiction over the Yus, and reasoned, in view of a 1990 Georgia decision against Signet on the same issue and facts, that Banks could be found to have been aware of this problem with their "long-arm program" before they used the program against the Yus. (*Yu I, supra*, at pp. 1384-1388, 1390, citing *Signet Bank/Virginia v. Tillis* (1990) 196 Ga.App. 433 [396 S.E.2d 54].) Further evidence of culpable knowledge and intent included Banks' exemption of " '[p]eople in the limelight, celebrities, attorneys' " from the long-arm program. (*Yu I, supra*, at pp. 1382, 1390.) A Capital One officer had testified that suing out-of-state attorneys was viewed as a "bad business decision," and that celebrities were exempted

because " 'we didn't want to expose the company to any press because we hadn't done everything we needed to do.' " (*Id.* at p. 1382.) This evidence, which has been likened to "wearing a sign that says, 'Sue me' " (Jaworski, *Subprime Lending Under Siege in the Courts—A Summary of Illustrative Cases* (2001) 55 Consumer Fin. L.Q.Rep. 70, 72 [commenting on *Yu I*]), along with evidence that Banks "obtain[ed] assembly-line default judgments as a regular business practice" through their long-arm program (Chen, *Due Process as Consumer Protection: State Remedies for Distant Forum Abuse, supra,* 20 Akron L.Rev. at p. 15 [describing the "ideal scenario" for a creditor practicing distant forum abuse]; *Yu I, supra,* at pp. 1382, 1390 [90 percent of Banks' long-arm suits resulted in default judgments]), precluded entry of summary judgment for Banks consistent with the decision in *Barquis.*

We rejected Banks' contention that *Barquis* was distinguishable because the Yus' default was obtained in compliance with Virginia law. (*Yu I, supra,* 69 Cal.App.4th at pp. 1390-1391 [noting that no Virginia appellate court had ever purported to authorize "long-arm" jurisdiction over out-of-state consumers for debt collection purposes].) We also rejected Banks' various arguments as to why *Barquis* could not be applied to their conduct. The summary judgment was based largely on the theory that Virginia courts had personal jurisdiction over the Yus, and we explained why that theory was incorrect. We pointed out the Yus' lack of minimum contacts with Virginia, and rejected Banks' claim that we could not properly inquire into the Virginia court's jurisdiction. (*Yu I,* at pp. 1384-1388.) We also rejected Banks' related arguments that, notwithstanding *Barquis:* (1) no abuse of process could be found because California cannot regulate out-of-state conduct that was lawful where it occurred; (2) principles of sovereignty and comity precluded imposition of liability based on a sister state judgment; and (3) inquiry into the validity of the Virginia judgment could not be used to award any relief apart from refusal to enforce the judgment. (*Yu I,* at pp. 1391-1393.) We ultimately concluded "that *Barquis*'s holding can be applied to [Banks'] conduct, even though the distant [forum] abuse occurred in another state and involved the procuring of a foreign judgment." (*Id.* at p. 1394.)

B. *Subsequent Proceedings*

When the case returned to the trial court after Banks' petitions to the California Supreme Court for review and to the United States Supreme Court for certiorari were denied, Banks moved for judgment on the pleadings. Banks argued that *Barquis* was wrongly decided insofar as it would subject them to liability for abuse of process, and that their conduct was privileged, under the litigation privilege (Civ. Code, § 47, subd. (b)(2)) and the First

Amendment. Capital One argued separately that the Yus had no claim against it for abuse of process because it was not involved in obtaining the Virginia default judgment and garnishment summons against the Yus. The Yus opposed the motion on the ground, among others, that Banks' arguments were barred by our decision in *Yu I* under the doctrine of the law of the case. The court granted the motion, with leave to amend to allege facts showing that (1) the Yus "had no contacts with Virginia beyond acceptance of the credit card solicitation"; and (2) Banks executed on the default judgment "without a good faith belief that there existed any additional bases for personal jurisdiction beyond the acceptance of the credit card solicitation."

The Yus filed a third amended complaint that added allegations pertaining to Virginia jurisdiction as required by the court's order. They also added an allegation acknowledging that Ms. Yu had accepted a secured credit card from Signet in addition to the unsecured credit card that became the subject of the collection action. They deleted allegations relating to the causes of action on which summary judgment for Banks had been granted. They left unchanged the allegations of abuse of process and unfair business practice.

Banks then filed a demurrer to the third amended complaint, reasserting the same arguments they had advanced in their motion for judgment on the pleadings. Capital One demurred separately to the cause of action for abuse of process, making the same argument it had raised in the motion for judgment on the pleadings. Banks also filed a special motion to strike the third amended complaint under the anti-SLAPP law. The court sustained Banks' demurrer without leave to amend, and denied the anti-SLAPP motion as well as the Capital One demurrer as moot.

The court determined that the Yus could not state a cause of action for abuse of process or, alternatively, that Banks' conduct was immunized by the litigation privilege, and explained its reasoning in a statement of decision. Since it was "obvious" that "it is not wrongful to litigate an action absent personal jurisdiction," the court concluded that there was no abuse of process, and "absent sufficient allegations of misuse of process, [Banks'] actions in pursuing and executing upon the underlying judgment appear[ed] to be exactly the type of acts protected by the litigation privilege." The court found that dismissal of the abuse of process claim disposed of the unfair business practice claim. The court acknowledged that *Yu I* set forth the "law of the case" and that *Yu I* had cited the *Barquis* decision "for the general proposition that bringing suit in a distant forum could constitute tortious conduct." However, the court thought that *Barquis* was distinguishable and that *Barquis* was in any event "limited to its facts."

## II. Yus' Appeal (A095102)

### A. Law of the Case

The Yus contend that they have stated viable abuse of process and unlawful business practice causes of action under the *Barquis* decision, and that the trial court's conclusions to the contrary violated the law of the case established in *Yu I*.

Under the law of the case doctrine, " 'the decision of an appellate court, stating a rule of law necessary to the decision of the case, conclusively establishes that rule and makes it determinative of the rights of the same parties in any subsequent retrial or appeal in the same case.' " (*Nally v. Grace Community Church* (1988) 47 Cal.3d 278, 301 [253 Cal.Rptr. 97, 763 P.2d 948].) The doctrine applies to decisions of intermediate appellate courts as well as courts of last resort. (*People v. Shuey* (1975) 13 Cal.3d 835, 841 [120 Cal.Rptr. 83, 533 P.2d 211].) The doctrine promotes finality by preventing relitigation of issues previously decided. (*George Arakelian Farms, Inc. v. Agricultural Labor Relations Bd.* (1989) 49 Cal.3d 1279, 1291 [265 Cal.Rptr. 162, 783 P.2d 749]; *Searle v. Allstate Life Ins. Co.* (1985) 38 Cal.3d 425, 434 [212 Cal.Rptr. 466, 696 P.2d 1308]; see also *People v. Stanley* (1995) 10 Cal.4th 764, 786 [42 Cal.Rptr.2d 543, 897 P.2d 481]). The doctrine does not apply to points of law that might have been determined, but were not decided in the prior appeal. (*Nally v. Grace Community Church, supra,* 47 Cal.3d at p. 302.) However, the doctrine does extend to questions that were implicitly determined because they were essential to the prior decision. (*Estate of Horman* (1971) 5 Cal.3d 62, 73 [95 Cal.Rptr. 433, 485 P.2d 785]; 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 913, pp. 948-950, and authorities cited.) The doctrine is one of procedure rather than jurisdiction, and can be disregarded in exceptional circumstances. (*Searle v. Allstate Life Ins. Co., supra,* at p. 435.) "The principal ground for making an exception to the doctrine of law of the case is an intervening or contemporaneous change in the law." (*Clemente v. State of California* (1985) 40 Cal.3d 202, 212 [219 Cal.Rptr. 445, 707 P.2d 818].) The doctrine can also be disregarded to avoid an unjust decision. (*People v. Shuey, supra,* 13 Cal.3d at p. 846.) For the "unjust decision" exception to apply, "there must at least be demonstrated a manifest misapplication of existing principles resulting in substantial injustice." (*Ibid.*)

In *Yu I*, we held that *Barquis* was not distinguishable from the Yus' case and that, under *Barquis*'s standards, there were triable issues as to Banks' knowledge and intent that precluded summary judgment against the Yus on their abuse of process claim. (*Yu I, supra,* 69 Cal.App.4th at

pp. 1389, 1390.) We thereby necessarily determined that the Yus had stated a cause of action for abuse of process, and that *Barquis* remained good law. Under the principles set forth in the preceding paragraph, those explicit and implicit conclusions of law established the law of the case, and could be reexamined only as required to account for changes in the law after *Yu I*, or to avoid an injustice. Since neither of those exceptions to the law of the case doctrine is applicable, the trial court's decision is untenable.

The trial court cited *Donohue v. State of California* (1986) 178 Cal.App.3d 795 [224 Cal.Rptr. 57], to justify its departure from *Yu I*. The *Donohue* decision did not involve the law of the case doctrine; it simply noted that denial of a summary judgment motion did not necessarily preclude a later judgment on the pleadings. (*Id.* at pp. 801-802.) ■ Failure to state a cause of action is an issue that can generally be raised at any time (5 Witkin, Cal. Procedure, *supra*, Pleading, §§ 911, 954, pp. 370-371, 410-411), but that ability may be circumscribed by the law of the case. Once an appellate court has determined a point of law in the action, arguments inconsistent with that determination cannot be entertained unless an exception to the law of the case doctrine is applicable.

■ Banks' arguments in support of their demurrer are inconsistent with our opinion in *Yu I* because they rest on the proposition that *Barquis* was wrongly decided. Banks maintain that *Barquis* was mistaken insofar as it indicated that the filing of a complaint could be an abuse of process. Alternatively, Banks contend that their collection action was absolutely privileged under the litigation privilege or the First Amendment; if either of these privileges applies, then no form of distant forum abuse would be actionable, not even the intrastate variety addressed in *Barquis*. Since *Yu I* necessarily concluded that *Barquis* remains good law, these new arguments were contrary to the law of the case.[1]

Banks' new arguments are not based on developments in the law after *Yu I*. The abuse of process and litigation privilege arguments are grounded on

---

[1]There is authority that only the United States Supreme Court can establish the law of the case on federal constitutional and statutory issues. (9 Witkin, Cal. Procedure, *supra*, Appeal, § 896, p. 931.) This proposition is based entirely on the following passage in *Atchison etc. Ry. Co. v. Railroad Com.* (1930) 209 Cal. 460, 472 [288 P. 775]: "The doctrine of the 'law of the case' applies only to the decisions of the highest court on the particular issue under consideration. Where this issue involves the construction of the Constitution or statutes of the United States, the highest court is the Supreme Court of the United States, and, hence, the doctrine of the 'law of the case' does not apply to a decision of the state Supreme Court." This portion of the *Atchison* opinion has not been followed in any subsequent case, and has been effectively overruled in subsequent decisions. The idea that only the "highest court" can create law of the case cannot be squared with the precedents indicating that the doctrine applies to decisions of intermediate appellate courts (e.g., *Searle v. Allstate Life Ins. Co.*, *supra*, 38 Cal.3d at p. 434; *People v. Shuey*, *supra*, 13 Cal.3d at p. 841), and it is apparent under *People v. Stanley*, *supra*, 10 Cal.4th 764, that our decisions can establish law of the case

*Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.* (1986) 42 Cal.3d 1157 [232 Cal.Rptr. 567, 728 P.2d 1202], *Silberg v. Anderson* (1990) 50 Cal.3d 205 [266 Cal.Rptr. 638, 786 P.2d 365], *Pacific Gas & Elec. Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118 [270 Cal.Rptr. 1, 791 P.2d 587], and *Rubin v. Green* (1993) 4 Cal.4th 1187 [17 Cal.Rptr.2d 828, 847 P.2d 1044], a series of precedents which according to Banks has so "eroded" *Barquis* that *Barquis* must now be "disregarded." Banks' First Amendment claim is likewise predicated on various pre-*Yu I* precedents. Accordingly, the new arguments do not fall within the subsequent developments exception to the law of the case doctrine.

The "unjust decision" exception to the doctrine is also inapplicable. To address Banks' new arguments at length would defeat the doctrine's principal purpose (*Searle v. Allstate Life Ins. Co., supra,* 38 Cal.3d at p. 435 [promotion of judicial economy]), but we would observe that none of the new cases Banks now cite are directly on point. The new cases do not involve distant forum abuse, and do not establish that it was a "manifest misapplication of existing principles" to recognize a cause of action for that abuse in *Yu I.* (*People v. Shuey, supra,* 13 Cal.3d at p. 846.) Banks contend that the filing of a lawsuit cannot be an abuse of process, but *Barquis* is a recognized exception to that general rule. (Com. to BAJI No. 7.71 (9th ed. 2002) p. 269.) The *Barquis* court explained why distant forum abuse "amounts to a tortious abuse of process" (*Barquis v. Merchants Collection Assn., supra,* 7 Cal.3d at pp. 103-104), noting the "broad reach" of this tort, which had "evolved as a 'catch-all' category to cover improper uses of the judicial machinery" that do not constitute malicious prosecution (*id.* at p. 104, fn. 4). Nor are we persuaded by any of Banks' authorities, which do not remotely consider the question, that creditors have a First Amendment right or other privilege to commit distant forum abuse.[2]

Banks observe that the law of the case doctrine does not extend to issues that might have been, but were not, raised in a prior appeal—an oblique acknowledgement that the new arguments could have been asserted in *Yu I.* However, the issue—whether the Yus have a cause of action for abuse of process under *Barquis*—is the same as before; Banks have simply refined their arguments as to that issue. In *Yu I* we were told that *Barquis* could not be applied because the distant forum abuse in this case involved a foreign

---

as to federal questions, even those of constitutional dimension (*id.* at pp. 786-790 [Court of Appeal's determination of Fourth Amendment issues was law of the case]). In *Atchison,* our Supreme Court departed from an earlier decision in the case because the United States Supreme Court had announced a new rule in the interim; *Atchison* thus falls within the exception to the law of the case doctrine for subsequent changes in the law.

[2]This observation also applies to the decision in *Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811 [123 Cal.Rptr.2d 19, 50 P.3d 733], which is cited in Banks' petitions for rehearing.

judgment and conduct in another state; now we are told that *Barquis* cannot be applied because, for various reasons, it is a dead letter even in California.

Banks maintain that they are free to advance the new arguments because we did not previously address them in *Yu I*, but if that were true, then Banks could raise their arguments in piecemeal fashion and endlessly relitigate *Barquis*'s applicability. After asserting in a first appeal that *Barquis*'s application would violate principles of sister state sovereignty, Banks could assert in a second appeal that *Barquis*'s application would be precluded by the litigation privilege, and assert in a third appeal that *Barquis*'s application would be inconsistent with the First Amendment, and so on. "Fortunately, fundamental rules of appellate review are specifically designed to preclude the possibility of this type of multiple litigation of the same issue." (*People v. Shuey, supra*, 13 Cal.3d at p. 841 [discussing the law of the case doctrine].) Litigants are not free to continually reinvent their position on legal issues that have been resolved against them by an appellate court. "It would be absurd that a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost." (*Fogel v. Chestnutt* (2d Cir. 1981) 668 F.2d 100, 109.)

Banks suggest that they may raise their new arguments because our unqualified partial reversal in *Yu I*—as opposed to a partial reversal with directions—left the case "at large" for further proceedings, including any challenge to the legal sufficiency of the Yus' remaining claims. ■ However, the law of the case doctrine applies following a general remand. (Note, *Law of the Case* (1953) 5 Stan. L.Rev. 751, 755.)

■ Therefore, we reiterate what we decided in *Yu I*: the Yus have a cause of action under *Barquis* for abuse of process based on Banks' practice of distant forum abuse. Since the dismissal of the unfair business practice claim as well as the abuse of process claim was based on the trial court's conclusion to the contrary, the judgment as to both causes of action must be reversed.

B. *Capital One's Demurrer*

■ Capital One contends that the judgment in its favor can be sustained on the alternative theory advanced in its separate demurrer: that although it participated in the long-arm program as Signet's successor, it was not involved in any abuse of process against the Yus. Since this argument does not depend on *Barquis*'s invalidity, and it was not explicitly or implicitly addressed in *Yu I*, it is not barred by the law of the case. The argument is nevertheless unsupported by the record. According to the third amended complaint, Mr. Yu's wages were garnished from November 1994 to May 1995, and Capital One took over the long-arm program from Signet in November 1994. The complaint thus effectively alleges that Capital One

took and received all, or substantially all, of the recovery generated by the collection action. Consequently, Capital One was not entitled to judgment on the ground that it did not participate in the abuse of process against the Yus.

### III. Banks' Appeal (A094519)

#### A. *Preliminary Issues*

Banks contend that the trial court erred in denying, as moot, their motion to strike the third amended complaint under the anti-SLAPP law when it sustained their demurrer to that complaint without leave to amend. Banks argue that the sustaining of the demurrer did not obviate the motion to strike because they would have been entitled to attorney's fees and costs if the motion succeeded. (§ 425.16, subd. (c); see *Pfeiffer Venice Properties v. Bernard* (2002) 101 Cal.App.4th 211, 218-219 [123 Cal.Rptr.2d 647]; *Liu v. Moore* (1999) 69 Cal.App.4th 745, 748 [81 Cal.Rptr.2d 807].) Entirely apart from that argument, the motion to strike is not moot in view of our reversal of the ruling on the demurrer. Thus, the rationale for denial of the motion is no longer viable.

Banks request that we rule on the motion, rather than returning it to the trial court to determine in the first instance. The Yus do not object to this request, and the parties' positions on the motion have been fully briefed herein. Having been asked to rule by the party who would tend to benefit from further delay, we will address the anti-SLAPP issues to expedite the ultimate resolution of the case.

The Yus' threshold argument against the anti-SLAPP motion is that it should be denied as untimely. The statute provides that the motion "may be filed within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms it deems proper" (§ 425.16, subd. (f)), and states that the word " 'complaint' includes 'cross-complaint' and 'petition' " (§ 425.16, subd. (h)). Banks' motion was filed years after the case commenced, but within 60 days of service of the third amended complaint. The Yus contend that the term "complaint" in the statute does not include an amended complaint, and thus that the motion could not be filed, without leave of the court, more than 60 days after service of the original complaint.

In support of this construction, the Yus cite history of the 1997 legislation that amended section 425.16 by, among other things, adding subdivision (h) indicating that "complaint" includes "cross-complaint" and "petition." (Stats. 1997, ch. 271, § 1.) The bill as originally introduced had provided for

the addition of the following italicized language to subdivision (f), stating that an anti-SLAPP motion "may be filed within 60 days of the service of the complaint *or any amended or supplemental complaint* or, in the court's discretion, at any later time upon terms it deems proper." (Sen. Bill No. 1296 (1997-1998 Reg. Sess.) Feb. 28, 1997.) The italicized language was not included in the bill as enacted. (Stats. 1997, ch. 271, § 1.) The Yus submit that deletion of this language demonstrates that the term "complaint" should not be construed to include "amended complaint." (See, e.g., *Rich v. State Board of Optometry* (1965) 235 Cal.App.2d 591, 607 [45 Cal.Rptr. 512].) They further contend, pointing to the late stage in the case at which Banks' motion was filed, that allowance of an anti-SLAPP motion as a matter of right following service of an amended complaint would be inconsistent with "the statutory design 'to prevent SLAPPs by ending them early.' " (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 65 [124 Cal.Rptr.2d 507, 52 P.3d 685].)

The Yus' position is contrary to the reported cases that have considered the issue. *Globetrotter Software v. Elan Computer Group* (N.D.Cal. 1999) 63 F.Supp.2d 1127, 1129, concluded, in view of the statutory admonition that the anti-SLAPP law be broadly construed (§ 425.16, subd. (a)), that the 60-day period for filing the motion runs from service of the most recent amended complaint, rather than the original complaint. *Lam v. Ngo* (2001) 91 Cal.App.4th 832, 840-842 [111 Cal.Rptr.2d 582], reached the same conclusion, pointing out among other things that if the statute were construed as the Yus urge, a plaintiff might attempt to circumvent the anti-SLAPP law by waiting until an amended complaint to assert its SLAPP allegations. (See also *DuPont Merck Pharmaceutical Co. v. Superior Court* (2000) 78 Cal.App.4th 562, 565 [92 Cal.Rptr.2d 755].)

In addition to the persuasive considerations cited in these cases, we note that the record herein points up another problem with the Yus' interpretation. It appears that the original complaint in this case was never served; a first amended complaint was filed shortly after the original one, and it was evidently the first to be served. In this situation, it is unclear under the Yus' construction when Banks would have been entitled as a matter of right to file their motion.

As for the legislative history cited by the Yus, since there are other statutes in the Code of Civil Procedure where the term "complaint" implicitly encompasses "amended complaint" (e.g., Code Civ. Proc., §§ 422.10, 430.10, 431.30, 435, 438), the Legislature may have decided that it would have been superfluous to refer to amended complaints in section 425.16, subdivisions (f) or (h). That reference might also have been regarded as

unnecessary in view of the bill's other provision directing that the anti-SLAPP statute be broadly construed. (Stats. 1997, ch. 271, § 1.) Thus, we are unable to read as much into the bill's amendment as the Yus advocate, and will adhere to the precedents on the timeliness issue.

Admittedly, this is not a case where an anti-SLAPP motion was promptly made to counter SLAPP allegations first added to an amended pleading. Banks could have filed their motion at the outset of the case and, like the arguments in their demurrer to the third amended complaint, their anti-SLAPP theory seems to have been an afterthought. Banks' opportunity to belatedly raise that theory arose as a matter of right only because the Yus were required to file a third amended complaint, which deleted many more allegations than it added, and added nothing that implicated the anti-SLAPP law. We nevertheless conclude, for the reasons set forth above, that Banks' motion was timely because it was filed within 60 days of service of the third amended complaint.

## B. *Merits of the Motion*

### (1) *The Two-prong Test*

Section 425.16, subdivision (b)(1) provides that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Section 425.16, subdivision (e) sets forth four categories of " 'act[s] in furtherance of a person's right of petition or free speech,' " including: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive or judicial body, or any other official proceeding authorized by law . . . ."

Ruling on an anti-SLAPP motion is "a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then determines

whether the plaintiff has demonstrated a probability of prevailing on the claim. Under section 425.16, subdivision (b)(2), the trial court in making these determinations considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' " (*Equilon Enterprises v. Consumer Cause, Inc., supra,* 29 Cal.4th at p. 67.)

### (2) *Arising from Protected Activity*

 The Yus contend that their case does not arise from protected activity because Banks cannot show that the action was brought with the intent to chill their exercise of constitutional speech or petition rights. However, our Supreme Court has recently ruled in *Equilon Enterprises v. Consumer Cause, Inc., supra,* 29 Cal.4th at pages 57, 59, that there is no such "intent-to-chill proof requirement." To satisfy the "arising from" test, it need only be "demonstrate[d] that the defendant's conduct by which plaintiff claims to have been injured falls within one of the four categories described in [section 425.16,] subdivision (e)." (*Id.* at p. 66.) " 'From that fact the court may [effectively] presume the purpose of the action was to chill the defendant's exercise of First Amendment rights.' " (*Id.* at p. 61.)

"[T]he statutory phrase 'cause of action . . . arising from' means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech. [Citations.] In the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech. [Citations.] 'A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e).' " (*City of Cotati v. Cahsman* (2002) 29 Cal.4th 69, 78 [124 Cal.Rptr.2d 519, 52 P.3d 695].)

 It is ironic that a lawsuit challenging distant forum abuse—a practice calculated to *prevent* the Yus' "public participation" in the collection action against them—should itself meet the threshold definition of a SLAPP suit, but that is the result under the anti-SLAPP statute. Since the Yus' case is based entirely on the collection action Banks filed against them, we conclude that it satisfies the "arising from" standard. "It is well established that filing a lawsuit is an exercise of a party's constitutional right of petition." (*Chavez v. Mendoza* (2001) 94 Cal.App.4th 1083, 1087 [114 Cal.Rptr.2d 825].) "A claim for relief filed in . . . court indisputably is a 'statement or writing made before a . . . judicial proceeding' [under] (§ 425.16, subd. (e)(1))." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 90 [124 Cal.Rptr.2d 530, 52 P.3d 703].)

This conclusion does not imply that the distant forum abuse alleged by the Yus was a valid exercise of Banks' constitutional rights. The lawfulness of the defendant's petitioning activity is generally not at issue in the "arising from" prong of the anti-SLAPP inquiry;[3] that question is ordinarily addressed in the second, "minimal merit" prong of the inquiry relative to the plaintiff's probability of success on the merits. " 'The Legislature did not intend that in order to invoke the special motion to strike the defendant must first establish her actions are constitutionally protected under the First Amendment as a matter of law.' " (*Navellier v. Sletten, supra,* 29 Cal.4th at pp. 94-95.) "That the Legislature expressed a concern in the statute's preamble with lawsuits that chill valid exercise of First Amendment rights does not mean that a court may read a separate proof-of-validity requirement into the operative sections of the statute. [Citations.] Rather, any 'claimed illegitimacy of the defendant's acts is an issue which the plaintiff must raise *and* support in the context of the discharge of the plaintiff's [secondary] burden to provide a prima facie showing of the merits of the plaintiff's case.' " (*Id.* at p. 94.)

### (3) *Probability of Success*

#### (a) *Standards to Be Applied*

 "In order to establish a probability of prevailing on the claim (§ 425.16, subd. (b)(1)), a plaintiff responding to an anti-SLAPP motion must ' "state[] and substantiate[] a legally sufficient claim." ' [Citations.] Put another way, the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' [Citations.] In deciding the question of potential merit, the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant (§ 425.16, subd. (b)(2)); though the court does not *weigh* the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim." (*Wilson v. Parker, Covert & Chidester, supra,* 28 Cal.4th 811, 821 [123 Cal.Rptr.2d 19, 50 P.3d 733].) Thus, a plaintiff's burden as to the second prong of the anti-SLAPP test is akin to that of a party opposing a motion for summary judgment. (*Kyle v. Carmon*

---

[3]It is not argued that the illegality of Banks' petitioning activity has been effectively conceded, or conclusively established by the evidence. (See *Governor Gray Davis Com. v. American Taxpayer's Alliance* (2002) 102 Cal.App.4th 449, 459 [125 Cal.Rptr.2d 534]; *Paul for Council v. Hanyecz* (2001) 85 Cal.App.4th 1356, 1367 [102 Cal.Rptr.2d 864], disapproved on another point in *Equilon Enterprises v. Consumer Cause, Inc., supra,* 29 Cal.4th at p. 68, fn. 5.)

(1999) 71 Cal.App.4th 901, 907-908 [84 Cal.Rptr.2d 303].) The causes of action need only be shown to have "minimal merit." (*Navellier v. Sletten, supra,* 29 Cal.4th at p. 89.)

(b) *Conclusion*

In *Yu I*, we held that Banks were not entitled to summary judgment on the Yus' abuse of process and unfair business practice claims. Here, we likewise conclude that these claims have sufficient potential merit to withstand Banks' anti-SLAPP motion.

(c) *Points Previously Determined*

Banks' principal arguments in their anti-SLAPP motion are the same as those in their demurrer: that the Yus have no cause of action for abuse of process under post-*Barquis* precedents, or that, notwithstanding *Barquis,* distant forum abuse is protected by the First Amendment or the litigation privilege. Our previous discussion of the law of the case has disposed of these arguments. Our prior discussion has also disposed of Capital One's contention, advanced in the anti-SLAPP motion as well as Capital One's separate demurrer, that it cannot be held liable because it was not involved in any abuse of process against the Yus.

(d) *Jurisdiction*

Banks argue that the Yus have no viable claims because they cannot demonstrate that Virginia lacked personal jurisdiction over them. In *Yu I*, we concluded that the Yus' case hinged on the fact that they were not subject to personal jurisdiction in the Virginia court where their default judgment was taken. (*Yu I, supra,* 69 Cal.App.4th at pp. 1384-1385.) We explained why such jurisdiction was lacking on the record presented in *Yu I*, where it appeared that the Yus had no contact with Virginia other than one Signet credit card. (*Id.* at pp. 1386-1388.) It has since been confirmed that the Yus had a second Signet credit card, a secured card that required them to maintain a bank account in Virginia. Banks contend that this second credit card and related bank account distinguish the situation considered in *Yu I*, and provide the minimum contacts required to subject the Yus to personal jurisdiction in Virginia.

Assuming that *Yu I* is no longer the law of the case on the jurisdictional issue in view of these new facts (*Nollan v. California Coastal Com.* (1986) 177 Cal.App.3d 719, 724-725 [223 Cal.Rptr. 28], revd. on other grounds in *Nollan v. California Coastal Com'n* (1987) 483 U.S. 825 [107

S.Ct. 3141, 97 L.Ed.2d 677] [doctrine is inapplicable if record is changed in any substantial respect]), the new facts nevertheless do not alter our prior conclusion that Virginia had no personal jurisdiction over the Yus. Although the Yus had two Signet credit cards instead of one, as well as a bank account in Virginia as required for the secured card, they still cannot be deemed to have " ' "purposefully directed" [their] activities at residents of the forum' . . . ' "such that [they] should reasonably [have] anticipate[d] being haled into court there." ' " (*Yu I, supra,* 69 Cal.App.4th at p. 1387, quoting *Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462, 472, 474 [105 S.Ct. 2174, 2182, 2183, 85 L.Ed.2d 528].)

To conclude that the consumer transactions between the Yus and Signet made the Yus amenable to personal jurisdiction in Virginia would be inconsistent with the United States Supreme Court's decision in the *Burger King* case. As noted in *Yu I, Burger King* " 'emphasize[d] that jurisdiction may not be grounded on a contract . . . whose application would render litigation "so gravely difficult and inconvenient that [a party] will for all practical purposes be deprived of his day in court." . . . [J]urisdictional rules may not be employed against small consumers so as to "crippl[e] their defense." . . . Just as the Due Process Clause allows flexibility in ensuring that commercial actors are not effectively "judgment proof" for the consequences of obligations they voluntarily assume in other States, . . . so too does it prevent rules that would unfairly enable them to obtain default judgments against unwitting customers. . . . [The] court must not be " 'blind' " to what " '[a]ll others can see and understand.' " . . . .' " (*Yu I, supra,* 69 Cal.App.4th at p. 1388, quoting *Burger King Corp. v. Rudzewicz, supra,* 471 U.S. at p. 486 [105 S.Ct. at pp. 2189-2190].)

Accordingly, we reiterate our holding in *Yu I,* taking into account the new facts, as follows: "[The Yus] are plainly in the class of 'unwitting customers' the *Burger King* court sought to protect. They had no relationship with Virginia other than [through] their credit card[s], and it was fundamentally unfair to expect them to travel thousands of miles to litigate matters concerning their account." (*Yu I, supra,* 69 Cal.App.4th at p. 1388.) We may presume that Banks had recourse against the Yus' Virginia bank account, but that does not mean the Yus were subject to personal jurisdiction in that state. (See 2 Witkin, Cal. Procedure (4th ed. 1996) Jurisdiction, § 237, pp. 798-799 [describing quasi in rem actions].) The jurisdictional issue, even given the new facts, is not a close one.

Banks submit that a contrary conclusion is required under the Virginia Supreme Court's recent decision in *Glumina Bank D.D. v. D.C. Diamond Corp.* (2000) 259 Va. 312 [527 S.E.2d 775], where a foreign bank was held

subject to personal jurisdiction in Virginia under a provision of the state's long-arm statute for " 'cause[s] of action for action arising from the person's . . . [c]ontracting to supply services or things in this Commonwealth' " (*id.* at p. 777). This authority is inapposite because the Yus did not contract to supply any goods or services in Virginia, and the jurisdictional issue is a matter of federal due process, not Virginia law, in any event.

### (e) *Damages*

■ Banks contend that the Yus cannot prove that they suffered any damages as a result of Banks' conduct. This argument does not apply to the unfair business practice claim (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 170 [83 Cal.Rptr.2d 548, 973 P.2d 527] [damages are not recoverable on that cause of action]), and does not defeat the cause of action for abuse of process.

Banks maintain, based on the following deposition testimony of Mrs. Yu, that the Yus have admitted that they owed all amounts collected from them in the Virginia action: "Q. And to this day, as you sit here in your deposition, do you have any feeling that you paid money to Signet that you and your husband didn't owe on a legitimate credit card debt? [¶] [Yus' counsel]: Objection, calls for a legal conclusion. [¶] A. We will pay them, but they took it from us forcefully. They just took any amount they wanted. [¶] Q. I understand that you and your husband don't like the way that the money was taken from you. But what I'm asking is whether you think that Signet was not owed the money that you paid them. [¶] [Yus' counsel]: Objection, vague and ambiguous. [¶] A. Yes, we will pay them because we owe them the money. [¶] Q. And what I'm asking you is that—you have paid them money through the garnishing of your husband's wages; correct? [¶] A. Correct. [¶] Q. And what I'm asking is whether that money that you paid was owed to Signet. [¶] [Yus' counsel]: Objection, calls for a legal conclusion. [¶] A. Correct. [¶] Q. It was owed to Signet. [¶] [Yus' counsel]: Same objection. [¶] A. Yes."

For a number of reasons, this testimony cannot be taken as a conclusive admission that the Yus suffered no compensable damages. First, there is no suggestion that Mrs. Yu was given any breakdown of the amount Banks collected; she was simply being asked whether she disputed the debt. According to other evidence in the record, $3,944.95 was garnished from Mr. Yu's wages. This figure is itemized as follows in the "garnishment summons" that was served on Mr. Yu's employer: $2,191.38 judgment principal; $1,672.57 interest; $48 judgment costs; and $33 garnishment costs. Even if the principal and interest specified in the summons were

indisputably owed, additional "judgment" and "garnishment" costs associated with the abusive process, and disputed under the Yus' theory of the case, were also collected. It thus appears that the Yus suffered at least some small amount of economic damages.

Second, in addition to their economic damages, the Yus can seek damages for emotional distress. "Emotional distress is also an accepted item of damage that may be recovered in actions for abuse of process." (*Thing v. La Chusa* (1989) 48 Cal.3d 644, 649 [257 Cal.Rptr. 865, 771 P.2d 814].) Banks contend that we decided in *Yu I* that the Yus cannot recover emotional distress damages because we affirmed the judgment for Banks on the Yus' causes of action for intentional and negligent infliction of emotional distress. In *Yu I*, we held that Banks' conduct was not sufficiently "outrageous" to support a cause of action for intentional infliction of emotional distress (*Yu I, supra*, 69 Cal.App.4th at pp. 1397-1398), and that the Yus had no cause of action for negligent infliction of emotional distress because they had suffered no physical injuries (*id.* at p. 1397).

These holdings are not, as Banks would have it, law of the case prohibiting the Yus from recovery of emotional distress damages for abuse of process. As explained above, a point does not become the law of the case unless it was actually or implicitly decided in a prior appeal. (*People v. Shuey, supra*, 13 Cal.3d at p. 842; *Estate of Horman, supra*, 5 Cal.3d at p. 73.) Since damages for abuse of process were not at issue in *Yu I*, nothing in that opinion can be taken to suggest, contrary to established law, that those damages may not include recovery for emotional distress. (*Thing v. La Chusa, supra*, 48 Cal.3d at p. 649.) The lack of physical injury and the absence of outrageous conduct noted in *Yu I* do not bear on the abuse of process claim because neither factor is an element of that cause of action. (See BAJI No. 7.70 (9th ed. 2002).) That Banks' acts were not so extremely uncivilized as to support a claim that they were undertaken for the specific purpose of distressing the Yus (see *Yu I, supra*, 69 Cal.App.4th at p. 1398) does not mean the Yus cannot recover for distress they suffered as a by-product of the abuse of process.

Third, the Yus' actual damages will entitle them to punitive damages if their allegations of malice or oppression are credited. (Civ. Code, § 3294, subd. (a); *Kizer v. County of San Mateo* (1991) 53 Cal.3d 139, 147 [279 Cal.Rptr. 318, 806 P.2d 1353] [actual damages are a prerequisite for award of punitive damages]; e.g., *Coy v. Advance Automatic Sales Co.* (1964) 228 Cal.App.2d 313, 315 [39 Cal.Rptr. 476], disapproved on another point in *White Lighting Co. v. Wolfson* (1968) 68 Cal.2d 336, 350, fn. 8 [66 Cal.Rptr. 697, 438 P.2d 345].) "The award of . . . exemplary damages for abuse of

process is well supported." (*Clark Equipment Co. v. Wheat* (1979) 92 Cal.App.3d 503, 528 [154 Cal.Rptr. 874]; e.g., *Templeton Feed & Grain v. Ralston Purina Co.* (1968) 69 Cal.2d 461, 471-472 [72 Cal.Rptr. 344, 446 P.2d 152]; see also *Yu I, supra,* 69 Cal.App.4th at p. 1392.)

Thus, Banks' argument that the Yus cannot recover any damages fails.

### (f) Unclean Hands

Banks maintain that any recovery by the Yus is precluded by the equitable defense of unclean hands. ■■■ "The [unclean hands] doctrine demands that a plaintiff act fairly in the matter for which he seeks a remedy. He must come into court with clean hands, and keep them clean, or he will be denied relief, regardless of the merits of his claim." (*Kendall-Jackson Winery, Ltd. v. Superior Court* (1999) 76 Cal.App.4th 970, 978 [90 Cal.Rptr.2d 743].) The defense can be asserted against an abuse of process claim (see *id.* at pp. 978, 986 [defense applies in legal as well as equitable actions; defense applied to cause of action for malicious prosecution]), and we will assume without deciding that the defense can be advanced in a motion to strike an unlawful business practice claim (but see *Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 179 [96 Cal.Rptr.2d 518, 999 P.2d 706] ["equitable defenses may not be asserted to wholly defeat a UCL [§ 17200] claim"]). However, Banks have identified no facts sufficient to raise the defense in this case.

■■■ The Yus' alleged misconduct is what Banks call their "cavalier attitude" toward repaying their debt to Signet. In Banks' view, this attitude was reflected in Mr. Yu's deposition, where he testified that all he could remember about a letter he received from Signet was that it was "just [a] regular collection letter stating how much you owe them, which account number, blah blah, and who to call, the 800 number on the bottom." He also said that when he received a packet of documents from Signet about garnishing his wages, he thought Signet might be "bluffing," and took a "wait-and-see attitude" as to "whether it's really going to happen or not." He added, "I don't know if they are legal documents are not. I have no idea. It comes all the way from Virginia and I've never seen a Court of Virginia paper before. That's the reason why I thought these are phony stamps on it they send to—maybe I thought it was a collection tactic that they use to maybe scare people off." In addition to this testimony, there is evidence that the Yus received no communication from Signet for four years after their account was declared delinquent, and thought their debt had been paid.

If the culpability of the Yus' behavior and attitude toward their obligation were relevant, there would be enough room for dispute to preclude the

granting of a motion to strike on that issue. (See *Mattco Forge, Inc. v. Arthur Young & Co.* (1992) 5 Cal.App.4th 392, 407-408 [6 Cal.Rptr.2d 781] [unclean hands defense generally raises questions of fact that cannot be resolved on a motion for summary judgment].) In our view, however, the circumstances under which a debt is incurred are irrelevant to a claim based on collection of the debt through distant forum abuse. "The misconduct that brings the unclean hands doctrine into play must relate directly to the cause at issue. Past improper conduct or prior misconduct that only indirectly affects the problem before the court does not suffice." (*Kendall-Jackson Winery, Ltd. v. Superior Court, supra,* 76 Cal.App.4th at p. 979.) The problems associated with distant forum abuse—impairing individuals' rights to defend collection suits, and undermining of confidence in the judiciary (*Barquis v. Merchants Collection Assn., supra,* 7 Cal.3d at pp. 104, 108)—have nothing to do with why a debt is owed.

Moreover, the unclean hands doctrine is one that "protects the court's, rather than the opposing party's, interests." (*Kendall-Jackson Winery, Ltd. v. Superior Court, supra,* 76 Cal.App.4th at p. 978.) The courts' strong interest in deterring distant forum abuse (*Barquis v. Merchants Collection Assn., supra,* 7 Cal.3d at p. 108) requires that the unclean hands defense be narrowly applied in a suit to redress that abuse. (See 11 Witkin, Summary of Cal. Law (9th ed. 1990) Equity, § 13, p. 690 ["clean hands defense will not be recognized when to do so would be harmful to the public interest"]; cf. *Kendall-Jackson Winery, Ltd. v. Superior Court, supra,* at p. 986 [public policy favors broad application of defense in malicious prosecution actions].) We therefore reject Banks' attempt to shift the focus of the case away from their actions and intent onto "the general morals of the parties." (*Id.* at p. 979.)

### IV. DISPOSITIONS

The judgment for Banks is reversed (A095102), and the order denying Banks' motion to strike under the anti-SLAPP statute is affirmed (A094519). The Yus' request for attorney's fees and costs in connection with the motion to strike (§ 425.16, subd. (c) [motion frivolous or designed solely for delay]) is denied, but they shall recover their costs on both appeals (Cal. Rules of Court, rule 26(a)(1), (c)).

Reardon, J., and Sepulveda, J., concurred.

Petitions for a rehearing were denied November 25, 2002, and the opinion was modified to read as printed above. The petition of defendants and appellants for review by the Supreme Court was denied January 15, 2003.