Filed 5/25/17

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| AARON LEIDER, | ) | |
| | ) | |
| Plaintiff and Appellant, | ) | |
| | ) | S232622 |
| v. | ) | |
| | ) | Ct.App. 2/8 B244414 |
| JOHN LEWIS et al., | ) | |
| | ) | Los Angeles County |
| Defendants and Appellants. | ) | Super. Ct. No. BC375234 |
| _____ | ) | |

This taxpayer action arises from claims of elephant abuse at the Los Angeles Zoo, in alleged violation of various Penal Code provisions. An earlier appeal resulted in the reversal of a ruling that the complaint raised nonjusticiable issues of public policy. The case proceeded to trial, and plaintiff was awarded injunctive and declaratory relief. This second appeal presents two issues: (1) Did the Court of Appeal's earlier decision establish law of the case, barring defendants' new argument that the claim for equitable relief is precluded by Civil Code section 3369 (section 3369)?[1] (2) Does the "as otherwise provided by law" exception in section 3369 permit equitable relief in a taxpayer action seeking to

---

[1] "Neither specific nor preventive relief can be granted to enforce a penalty or forfeiture in any case, nor to enforce a penal law, except in a case of nuisance or as otherwise provided by law." (§ 3369.)

1

restrain "illegal" public expenditures under Code of Civil Procedure section 526a?[2]

The Court of Appeal answered these questions in the affirmative, with a dissent on both points. We reverse.

## I. BACKGROUND

The original complaint was filed by Robert Culp and Aaron Leider against the City of Los Angeles and the Director of the Los Angeles Zoo, John Lewis (collectively, the City). Plaintiffs alleged the zoo was violating Penal Code section 596.5 by abusing its elephants.[3] They sought injunctive and declaratory relief as taxpayers under Code of Civil Procedure section 526a. Their theory was that the City's criminal mistreatment of the animals amounted to an illegal and wasteful expenditure of public funds. The trial court granted summary judgment to the City. It ruled that the claims presented were not justiciable in a taxpayer action, and should be left for public officials or voters to resolve. The Court of Appeal reversed. It discerned a triable issue of fact as to whether the City's

---

[2]  Code of Civil Procedure section 526a provides in relevant part: "An action to obtain a judgment, restraining and preventing any illegal expenditure of, waste of, or injury to, the estate, funds, or other property of a county, town, city or city and county of the state, may be maintained against any officer thereof, or any agent, or other person, acting in its behalf, either by a citizen resident therein, or by a corporation, who is assessed for and is liable to pay, or, within one year before the commencement of the action, has paid, a tax therein."

[3]  "It shall be a misdemeanor for any owner or manager of an elephant to engage in abusive behavior towards the elephant, which behavior shall include the discipline of the elephant by any of the following methods:
  "(a) Deprivation of food, water, or rest.
  "(b) Use of electricity.
  "(c) Physical punishment resulting in damage, scarring, or breakage of skin.
  "(d) Insertion of any instrument into any bodily orifice.
  "(e) Use of martingales.
  "(f) Use of block and tackle." (Pen. Code, § 596.5.)

treatment of its elephants violated Penal Code section 596.5, and held that the statute provided "a legal standard by which the alleged governmental conduct may be tested," which "takes the issue beyond one of mere governmental discretion." (*Culp v. City of Los Angeles* (Sept. 23, 2009, B208520 [nonpub. opn.]) (*Culp*).)

Leider filed an amended complaint, again seeking injunctive and declaratory relief under Code of Civil Procedure section 526a. Former lead plaintiff Culp was by then deceased. The amended complaint added claims of cruelty and neglect under Penal Code sections 597 and 597.1.[4] The City demurred, relying on Civil Code section 3369 for the proposition that equity will not enjoin a Penal Code violation. The trial court overruled the demurrer, finding that the *Culp* decision foreclosed the City's Civil Code section 3369 argument. To accept that argument, the court said, "would render superfluous the entire appellate discussion of Penal Code section 596.5."

After a bench trial, the court issued injunctions prohibiting the City from using bullhooks or electric shock on zoo elephants, and requiring it to exercise the elephants and rototill their enclosure regularly. It entered declarations to the same effect.[5] The City appealed, and a divided Court of Appeal affirmed.

The majority held that (1) law of the case barred the section 3369 defense, and (2) the Legislature had authorized taxpayer actions aimed at enjoining government expenditures that support criminal conduct. The dissent took the view

---

**4** Penal Code section 597 proscribes cruelty to animals in general terms. Section 597.1 makes it a misdemeanor to keep an animal in any enclosure "without proper care and attention." (Pen. Code, § 597.1, subd. (a)(1).)
**5** The court acknowledged the City's assurance that it had stopped using bullhooks and electric shock. However, it noted the City had only discontinued the use of bullhooks during the litigation, and could resume the use of both tools unless restrained from doing so.

3

that law of the case did not apply because the validity of the section 3369 defense was not implicitly decided in *Culp*. It further concluded that under *Nathan H. Schur, Inc. v. City of Santa Monica* (1956) 47 Cal.2d 11 (*Schur*), taxpayer actions cannot be brought to restrain Penal Code violations. Although *Schur* did not consider the "as otherwise provided by law" exception, which was added to section 3369 in 1977, the principle that equity will not intervene to restrain criminal activity without specific statutory authorization is a long-established one. The dissent reasoned that the changes made in 1977 did not alter this settled rule, noting that legislative history shows the amendments were intended merely to reorganize code provisions.

## II.  DISCUSSION

Both issues here turn on questions of law, which we review de novo.

### A.  *Law of the Case*

" 'The doctrine of "law of the case" deals with the effect of the *first appellate decision* on the subsequent *retrial or appeal*:  The decision of an appellate court, stating a rule of law necessary to the decision of the case, conclusively establishes that rule and makes it determinative of the rights of the same parties in any subsequent retrial or appeal in the same case.'  [Citation.]" (*Morohoshi v. Pacific Home* (2004) 34 Cal.4th 482, 491.)  "Generally, the doctrine of law of the case does not extend to points of law which might have been but were not presented and determined in the prior appeal.  [Citation.]  As an exception to the general rule, the doctrine is . . . held applicable to questions not expressly decided but implicitly decided because they were essential to the decision on the prior appeal." (*Estate of Horman* (1971) 5 Cal.3d 62, 73 (*Horman*).)

The justiciability issue decided in *Culp* turned on whether Penal Code section 596.5 provided a sufficiently enforceable legal standard to allow a court to

4

resolve the plaintiffs' claims without "trespass[ing] into the domain of legislative or executive discretion." (*Harman v. City and County of San Francisco* (1972) 7 Cal.3d 150, 161.)[6] The Court of Appeal majority reasoned that when *Culp* held plaintiffs' claims justiciable, it implicitly determined that Code of Civil Procedure section 526a authorizes injunctive relief for violations of the Penal Code's animal abuse provisions. The majority relied on *Yu v. Signet Bank/Virginia* (2002) 103 Cal.App.4th 298 (*Yu*). On the first *Yu* appeal, the court reversed a grant of summary judgment. It found triable issues regarding the plaintiffs' abuse of process claim, which it said was indistinguishable from the claims held cognizable in *Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94 (*Barquis*). (*Yu*, at pp. 306-307.) On remand, however, the trial court sustained a demurrer without leave to amend, distinguishing *Barquis* and limiting it to its facts. (*Yu*, at p. 308.) The Court of Appeal again reversed. It declared the trial court's decision "untenable," and held that law of the case barred the defendants from contending *Barquis* was wrongly decided. (*Id*. at p. 310.) The court reasoned that its first opinion had "necessarily determined that the Yus had stated a cause of action for abuse of process, and that *Barquis* remained good law." (*Ibid*.)

The *Yu* court rejected the defendants' reliance on the rule that law of the case does not extend to issues that might have been but were not raised on a prior appeal. It concluded that whether there was a cause of action for abuse of process under *Barquis* was an issue decided on the first appeal. There the defendants had unsuccessfully tried to distinguish *Barquis*; in the second appeal they were trying

---

[6] The term "justiciability" has several meanings. (See 3 Witkin, Cal. Procedure (5th ed. 2008) Actions, § 21, p. 84.) The *Culp* appeal dealt with the branch of the doctrine pertaining to political questions, which courts try to avoid. (See Witkin, *supra*, § 37, pp. 103-104.)

to discredit it. "Litigants are not free to continually reinvent their position on legal issues that have been resolved against them by an appellate court. 'It would be absurd that a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost.' " (*Yu*, *supra*, 103 Cal.App.4th at p. 312.)[7]

The majority below was not persuaded by the City's reliance on *Horman*, *supra*, 5 Cal.3d 62, which involved a petition by the State of California to determine heirship. The state contended the decedent had left no heirs and therefore his estate escheated. A number of citizens of the Soviet Union appeared and presented claims. At trial, the state successfully contested the sufficiency of the claimants' showings of relationship to the decedent. (*Horman*, *supra*, 5 Cal.3d at pp. 68-69.) The Court of Appeal reversed, concluding that several trial court rulings had unfairly restricted the claimants' ability to present evidence. (*Estate of Horman* (1968) 265 Cal.App.2d 796, 805-809.) Shortly before retrial, the state asserted for the first time that four of the claimants had failed to present their claims within the five-year period prescribed by former Probate Code section 1026. The trial court ruled that the period had been tolled and entered judgment for the claimants. (*Horman*, *supra*, 5 Cal.3d at pp. 68-69.) This court reversed, deeming the tolling theory unsustainable and holding that law of the case did not bar the state's argument under former Probate Code section 1026. Regarding law of the case, the *Horman* court said:

---

[7]     *Yu* should not be misinterpreted as turning on considerations of waiver or estoppel. Its discussion is confined to law of the case, as applied to questions raised for the first time on a subsequent appeal. (See *Horman*, *supra*, 5 Cal.3d at pp. 72-73, discussing these issues separately.)

6

"The questions presented and determined on the prior appeal in this case were whether the survivors had established the identity of the decedent and their relationship to him, the admissibility of certain evidence, the discretion of the trial court in denying the motions to reopen and for new trial and the trial court's failure to rule on the admissibility of certain evidence.  [Citation.]  The Probate Code, section 1026 problem was not raised by either party and was not expressly determined by the court.  Neither can it fairly be said that determination of the issue was essential to the decision.  We have concluded, therefore, that the decision on the prior appeal did not foreclose the state from asserting this matter at the second trial."  (*Horman*, *supra*, 5 Cal.3d at pp. 73-74.)

Here, the majority distinguished *Horman* on the basis that "the new issue raised there was a procedural bar, while the earlier proceedings focused solely on the merits."  According to the majority, the City's new argument that section 3369 barred plaintiff's taxpayer action "bore an analytically substantive relationship" to the question of whether the claims in *Culp* were justiciable.  But the dissent by Justice Bigelow, who authored *Culp*, concluded that "[o]ur first decision did not state a rule of law necessary to the decision of the case that we may apply in this subsequent appeal to resolve the section 3369 issue."  The dissent conceded that this case "shares some similarities with *Yu*," but found *Horman* persuasive.  "[W]hether construed as a procedural issue or a substantive one, the 'five-year period' problem [in *Horman*] was a threshold issue that was not raised until after the case was returned to the trial court following the first appeal."

The dissent reasoned that the *Culp* opinion "considered only a narrow issue regarding the justiciability of plaintiffs' claims, and concluded there were triable issues of material fact related to alleged illegal expenditures in connection with Penal Code section 596.5 alone.  Whether [Civil Code] section 3369 barred . . . injunctive relief . . . was not a ground of the decision."  The dissent is correct.

7

Civil Code section 3369 was not raised or ruled upon in connection with the *Culp* appeal.  Nor did any issue decided in that appeal implicate the relationship between Civil Code section 3369's limitation on equitable relief and the authorization of injunctive relief in taxpayer actions under Code of Civil Procedure section 526a.  Unlike the defendants in *Yu*, the City did not take a different approach to the same controlling authority on a second appeal.  Instead, as in *Horman*, it raised an entirely new statutory bar.

Therefore, this case is governed by the general rule that law of the case does not apply to arguments that might have been but were not presented and resolved on an earlier appeal.  (*Horman*, *supra*, 5 Cal.3d at p. 73; 9 Witkin, Cal. Procedure, *supra*, Appeal, § 476, pp. 534-535.)  As will be seen, whether section 3369 restricts the injunctive relief available in taxpayer actions is a question that raises complex issues of statutory interpretation.  It is a stretch too far to infer that the Court of Appeal necessarily resolved these technical points of law when it considered whether the original complaint presented issues of public policy inappropriate for judicial resolution.  The statements in *Yu* regarding continual reinvention of legal arguments were conditioned on the premise that the issue at hand had been implicitly determined on the prior appeal.  (*Yu*, *supra*, 103 Cal.App.4th at pp. 311- 312.)  Although as Witkin observes, whether an issue was implicitly decided can be "[a] most perplexing problem," this is not such a case. (9 Witkin, Cal. Procedure, *supra*, Appeal, § 476, p. 534.)  The *Culp* court fully resolved the justiciability issue before it without having to consider whether section 3369's limitation on equitable relief would apply in plaintiffs' taxpayer action.

B.  *The Bar Against Equitable Relief for Violations of Penal Law*

As enacted in 1872, section 3369 stated:  "Neither specific nor preventive relief can be granted to enforce a penalty or forfeiture in any case, nor to enforce a

8

penal law, except in a case of nuisance, nor to enforce a penalty or forfeiture in any case."[8] In *Perrin v. Mountain View Mausoleum Assn.* (1929) 206 Cal. 669, this court characterized the statute as "but the expression of the fundamental rule that courts of equity are not concerned with criminal matters and they cannot be resorted to for the prevention of criminal acts, except where property rights are involved." (*Id*. at p. 671, citing 5 Pomeroy's Equity Jurisprudence (2d ed. 1919) pp. 4291-4292.)

A central rationale for the rule embodied in section 3369 was set out in *People v. Lim* (1941) 18 Cal.2d 872 (*Lim*), which "articulated an important limitation on the scope of the government's power to exploit the public nuisance injunction as an adjunct of general legal policy." (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1106.) In *Lim*, a district attorney sought to enjoin the operation of a gambling establishment as a public nuisance. This court held that the Legislature, not the courts, must define which public nuisances are subject to restraint by injunction. " 'Nuisance' is a term which does not have a fixed content either at common law or at the present time. . . . In a field where the meaning of terms is so vague and uncertain it is a proper function of the legislature to define those breaches of public policy which are to be considered public nuisances within the control of equity." (*Lim*, at p. 880.) As particularly relevant here, the *Lim* court declared:

"Conduct against which injunctions are sought in behalf of the public is frequently criminal in nature. While this alone will not prevent the intervention of equity where a clear case justifying equitable relief is present [citations], it is apparent that the equitable remedy has the collateral effect of depriving a

---

[8]     As we have noted, the "as otherwise provided by law" exception was added to section 3369 in 1977. (Stats. 1977, ch. 299, § 2, pp. 1203-1204.)

defendant of the jury trial to which he would be entitled in a criminal prosecution for violating exactly the same standards of public policy. [Citations.] The defendant also loses the protection of the higher burden of proof required in criminal prosecutions and, after imprisonment and fine for violation of the equity injunction, may be subjected under the criminal law to similar punishment for the same acts. For these reasons equity is loath to interfere where the standards of public policy can be enforced by resort to the criminal law, and in the absence of a legislative declaration to that effect, the courts should not broaden the field in which injunctions against criminal activity will be granted. Thus, . . . the basis for an action such as this must be found in our statutes rather than by reference to the common law definitions of public nuisance." (*Lim*, *supra*, 18 Cal.2d at pp. 880-881.)

*Lim* involved a prosecutor's attempt to pursue injunctive relief instead of criminal penalties. However, *Lim* and section 3369 were applied to a private action in *International Etc. Workers v. Landowitz* (1942) 20 Cal.2d 418 (*Landowitz*). In 1933, section 3369 had been amended to read: "Neither specific nor preventive relief can be granted to enforce a penalty or forfeiture in any case, nor to enforce a penal law, except in a case of nuisance *or unfair competition*." (Former § 3369, subd. (1), italics added; Stats. 1933, ch. 953, § 1, p. 2482.) The *Landowitz* plaintiffs sought to enjoin violation of a municipal ordinance that regulated competitive practices among cleaners and dyers, and afforded both criminal and injunctive remedies. (*Landowitz,* at p. 421.) The ordinance had been enacted pursuant to an enabling statute that authorized laws permitting injunctive relief from unfair trade practices. However, the enabling statute was subsequently repealed, and *Landowitz* concluded the repeal was fatal to the plaintiffs' claims. (*Id*. at pp. 420-421.)

10

The *Landowitz* court strictly construed section 3369's exception for unfair competition to require both specific statutory description of prohibited conduct and specific authorization for injunctive relief. (*Landowitz*, *supra*, 20 Cal.2d at p. p. 421.) "In view of the well-established doctrine that equity will not ordinarily restrain the violation of a penal law (Civ. Code, § 3369 (1); *People v. Lim*, [*supra*,]18 Cal.(2d) 872, 880; *Perrin v. Mountain View Mausoleum Assn.*, [*supra*,] 206 Cal. 669, 671 . . .) and in view of the fact that this ordinance is clearly penal in nature, it follows that plaintiffs' action in equity to restrain its violation requires specific authorization, in the absence of which it must be held that the complaint fails to state a cause of action." (*Landowitz*, at p. 421.) Although section 3369 authorized injunctive relief in cases of " 'unfair competition,' " it did not expand the "traditional scope" of that term. (*Landowitz*, at p. 422.)

"The phrase 'unfair competition' when carried beyond its traditional scope in equitable actions . . . does not have a fixed meaning in the absence of statutory definition. Courts of equity, therefore, are loath to enjoin conduct on that ground in the absence of specific authorization therefor. [Citation.] The reasons underlying this rule are similar to those governing courts of equity in the issuance of injunctions against nuisances. We recently held in such a case that where the conduct sought to be enjoined was not within the traditional equitable jurisdiction, it must be brought clearly within the statutory definition of the term 'nuisance' and could not be predicated on the vague definitions of that term found in the early criminal law. (*People v. Lim*, *supra*, [18 Cal.2d at] p. 880.) Civil Code, section 3369, contains no broader a definition of the term 'unfair competition' than existed at common law and in itself furnishes no basis for an injunction against the violation of the penal ordinance involved in this case. Where the Legislature has sought to regulate methods of competition by means of injunction, it has specifically described the conduct which is prohibited. It has provided that such

11

conduct might be enjoined in equity . . . ." (*Landowitz*, *supra*, 20 Cal.2d at p. 422.)[9]

*Lim* was again followed in *Schur*, *supra*, 47 Cal.2d 11, the case most closely on point here. Nathan H. Schur (Schur), a corporation, sued the City of Santa Monica, asserting its status as a taxpayer and claiming that city officials were violating Penal Code section 337 by licensing certain games of chance.[10] It alleged that the city was "illegally spending money in such licensing and in policing the games." (*Schur*, at p. 13.)[11] At a city council hearing on applications for renewal of the licenses, Schur's principal had testified in opposition. The

---

[9] In later years, the Legislature extended the reach of the unfair competition law. (See *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 570 (*Stop Youth Addiction*).) In *Stop Youth Addiction*, this court held that an unfair competition action by a private party may be premised on a violation of a penal statute. We noted that the unfair competition statutes had long authorized civil actions to enforce a " 'penal law.' " (*Id*. at p. 567, quoting Civ. Code, former § 3369, subd. (1); see Bus. & Prof. Code, § 17202.) Governmental entities, however, are not subject to suit under the unfair competition law. (*People for Ethical Treatment of Animals, Inc. v. California Milk Producers Advisory Bd.* (2005) 125 Cal.App.4th 871, 878-879; see *Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1203.)

[10] Penal Code section 337 provides that "[e]very state, county, city, city and county, town, or judicial district officer, or other person who shall . . . issue, deliver, or cause to be given or delivered to any person or persons, any license, permit, or other privilege, giving, or pretending to give, any authority or right to any person or persons to carry on . . . any game or games which are forbidden or prohibited by Section 330 of [the Penal] code; and any of such officer or officers who shall vote for the passage of any ordinance or by-law, giving . . . any person or persons any authority or privilege to open . . . or cause to be opened . . . any game or games prohibited by said Section 330 of the Penal Code, is guilty of a felony."

[11] In a separate action, Schur challenged a city ordinance that limited the number of licenses the city could issue for conducting "games of skill." (*Schur*, *supra*, 47 Cal.2d. at p. 12.) That limitation presumably explains Schur's interest in invalidating existing licenses; it claimed it owned property in the city that was "adapted to conducting games." (*Id*. at p. 13.)

12

council decided the licensees' games did not violate the Penal Code's antigambling laws, and approved the renewals. (*Id.* at pp. 13-14.) The trial court, however, found that the city was illegally licensing the challenged games, and enjoined it from expending public funds to do so. (*Id.* at p. 14.)

The *Schur* court reversed. It explained that the action essentially sought to restrain city officials from committing a crime by issuing gambling licenses in violation of state law. The judgment enjoined the expenditure of city funds on the licenses, and also "declare[d] the games were contrary to the state laws. We believe that judgment cannot stand because the city officials were vested with authority to make the determination and the only method of relief therefrom was by a review of their action without taking independent evidence on the subject; that unless the conduct complained of constitutes a nuisance as declared by the Legislature, equity will not enjoin it even if it constitutes a crime, as the appropriate tribunal for the enforcement of the criminal law is the court in an appropriate criminal proceeding." (*Schur*, *supra*, 47 Cal.2d at p. 17.)

*Schur*'s reference to criminal court as the appropriate forum for adjudicating violations of criminal law is significant. (*Schur*, *supra*, 47 Cal.2d at p. 17.) "The prosecutor ordinarily has sole discretion to determine whom to charge, what charges to file and pursue, and what punishment to seek. [Citation.] No private citizen, however personally aggrieved, may institute criminal proceedings independently [citation], and the prosecutor's own discretion is not subject to judicial control at the behest of persons other than the accused. [Citations.] An individual exercise of prosecutorial discretion is presumed to be ' "legitimately founded on the complex considerations necessary for the effective and efficient administration of law enforcement." ' " (*Dix v. Superior Court* (1991) 53 Cal.3d 442, 451; see *People v. Eubanks* (1996) 14 Cal.4th 580, 588-589.) This fundamental tenet of our criminal justice system supports the *Schur*

13

court's reluctance to recognize violations of penal statutes as a basis for the issuance of equitable relief on behalf of private parties.

In *Schur*, a Penal Code statute specifically prohibiting the licensing of illegal games was not a sufficient basis for the issuance of injunctive relief in a taxpayer action. A provision expressly recognizing an equitable remedy was required. *Schur* established that Code of Civil Procedure section 526a was not such a statute. The court acknowledged that "a taxpayer may obtain preventive relief against the illegal expenditure of funds by a municipal corporation." (*Schur*, *supra*, 47 Cal.2d at p. 17, citing Code Civ. Proc., § 526a.) But it held that the trial court erred by granting such relief, for two reasons. First, determinations by city officials on gaming licenses were not reviewable de novo, but only for sufficiency of the evidence. (*Schur*, at pp. 16-18.) Second, *Lim* established that "although gambling places were nuisances under the common law they could not be abated" unless they amounted to a nuisance as defined by statute. (*Id*. at p. 18.)

The *Schur* court quoted *Lim* at length, followed by citations to section 3369 and *Landowitz, supra*, 20 Cal.2d 418. (*Schur*, *supra*, 47 Cal.2d at pp. 18-19.) It then advised the trial court that "[c]aution should be observed therefore upon retrial to avoid violating that rule." (*Id*. at p. 19.) The reference is to the rule found in section 3369, *Landowitz*, and *Lim*: " 'equity is loath to interfere where the standards of public policy can be enforced by resort to the criminal law, and in the absence of a legislative declaration to that effect, the courts should not broaden the field in which injunctions against criminal activity will be granted.' " (*Schur*, at p. 19, quoting *Lim*, *supra*, 18 Cal.2d at p. 880.)

Leider argues that *Schur*'s discussion of grounds for injunctive relief was merely dictum, and its holding rested on the conclusion that the trial court had improperly exercised independent review of the city's licensing decision. The argument fails. Statements responsive to the issues raised on appeal and intended

14

to guide the trial court on remand are not dicta. (*Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1158.) The availability of relief under Code of Civil Procedure section 526a was expressly at issue in *Schur*. The court specifically cautioned the trial judge, on remand, not to run afoul of the rule against broadening the field in which injunctions against criminal activity may be granted. (*Schur*, *supra*, 47 Cal.2d at p. 19.)

Neither Leider nor amici curiae refer us to *any* taxpayer action in which an "illegal expenditure" under Code of Civil Procedure section 526a was premised on a penal code violation. (See *Animal Legal Defense Fund v. California Exposition & State Fairs* (2015) 239 Cal.App.4th 1286, 1298 [noting "the dearth of authority recognizing a section 526a taxpayer action predicated on an alleged criminal violation"].)[12] *Schur* established the principle that express legislative authorization is required for a taxpayer action to overcome the bar against equitable relief codified in Civil Code section 3369. The question before us is whether such authorization was supplied in 1977, when the Legislature amended Civil Code section 3369 to transfer its unfair competition provisions to the Business and Professions Code.

Newly enacted Business and Professions Code section 17202 read then as it does now: "Notwithstanding Section 3369 of the Civil Code, specific or preventive relief may be granted to enforce a penalty, forfeiture, or penal law in a

---

[12]     In *Animal Legal Defense Fund v. California Exposition & State Fairs, supra*, 239 Cal.App.4th at pages 1297, 1301, the court held that administrative remedies were the sole avenue for enforcement of the animal abuse proscriptions in Penal Code sections 597 and 597t. Similarly, in *Animal Legal Defense Fund v. Mendes* (2008) 160 Cal.App.4th 136, 142, the court held that the Legislature did not intend to authorize a private right of action to enforce section 597t. Both opinions turned on theories that have not been litigated by the parties here. We express no view on their merits.

15

case of unfair competition." (Stats. 1977, ch. 299, § 1, p. 1202.) Civil Code section 3369 was amended to read as it does today: "Neither specific nor preventive relief can be granted to enforce a penalty or forfeiture in any case, nor to enforce a penal law, except in a case of nuisance *or as otherwise provided by law*." (Stats. 1977, ch. 299, § 2, pp. 1203-1204, italics added.) When the Legislature added "except . . . as otherwise provided by law" to Civil Code section 3369, did it intend to expand the meaning of "illegal expenditure" in Code of Civil Procedure section 526a to include expenditures furthering any violation of a criminal statute?

"Our primary task in interpreting a statute is to determine the Legislature's intent, giving effect to the law's purpose." (*Tuolumne Jobs & Small Business Alliance v. Superior Court* (2014) 59 Cal.4th 1029, 1037.) We begin with the language of the statutes as the most reliable indicator of intent. We construe terms in context, harmonizing the statutes both internally and with each other to the extent possible. (*Ibid.*) We presume the Legislature was aware of existing judicial decisions directly bearing on the legislation it enacted. (*City of San Jose v. Operating Engineers Local Union No. 3* (2010) 49 Cal.4th 597, 606 (*City of San Jose*).) We do not presume it meant to overthrow long-established principles of law, unless such an intention is clearly expressed or necessarily implied. (*Brodie v. Workers' Comp. Appeals Bd.* (2007) 40 Cal.4th 1313, 1325 (*Brodie*).)

When the Legislature moved the unfair competition provisions from Civil Code section 3369 to the Business and Professions Code, it made no accompanying changes in Code of Civil Procedure section 526a from which we might glean an intent either to change or retain the rules governing taxpayer actions. The relevant terms of Code of Civil Procedure section 526a have not been amended since the statute's enactment in 1909. (See Stats. 1909, ch. 348. § 1, p. 578.) At that time, the only exception provided in Civil Code section 3369

16

was for cases of nuisance, so taxpayer actions were subject to its provisions.  By the time of the 1977 amendments, *Schur* had so held.  (*Schur*, *supra*, 47 Cal.2d at pp. 17-19.)  *Schur* and *Landowitz* had underscored the necessity of express legislative provision for equitable relief against violations of a penal law.  (*Schur*, at p. 19; *Landowitz*, *supra*, 20 Cal.2d at p. 421.)  *Lim* stood as a warning against depriving defendants of the traditional protections of the criminal law in suits seeking injunctive relief, in the absence of legislative authorization of the kind now provided in the unfair competition law.  (*Lim*, *supra*, 18 Cal.2d at pp. 880-881.)  The principle of exclusive prosecutorial discretion over the bringing of criminal proceedings was well known.  (E.g., *People v. Sidener* (1962) 58 Cal.2d 645, 650; *Rosato v. Superior Court* (1975) 51 Cal.App.3d 190, 226.)

Given this state of the law, the Legislature's insertion of "except . . . as otherwise provided by law" into Civil Code section 3369 is reasonably understood as incorporating the requirements demanded by *Schur* and *Landowitz* when criminal activity is at issue:  a definition of prohibited conduct along with a provision specifically authorizing equitable relief to restrain the defined conduct.  *Schur* makes it plain that Code of Civil Procedure section 526a's general authorization of injunctive relief against "illegal" expenditures does not fulfill the second requirement.  (*Schur*, *supra*, 47 Cal.2d at pp. 17-19.)  The Legislature was presumptively aware of *Schur*'s holding.  Moreover, the legislative history discloses no desire to alter the rules governing injunctive relief in taxpayer actions.  If the Legislature had intended such a significant change, we would expect to see a trace of that intent in the history of the 1977 amendments.  (Cf. *Brodie*, *supra*, 40 Cal.4th at p. 1328.)

There is none.  To the contrary, the Legislature's focus was solely on the unfair competition provisions of section 3369, and even then it contemplated no substantive changes.  (See *Stop Youth Addiction*, *supra*, 17 Cal.4th at p. 570.)  The

17

bill enacting the 1977 amendments was described as "merely . . . a technical code adjustment in the location of various statutes relating to unfair competition." (Sen. Com. on Judiciary, rep. on Assem. Bill No. 1280 (1977-1978 Reg. Sess.) as amended June 3, 1977.) An Assembly bill digest explained: "The Civil Code contains a chapter . . . which [codifies] the general principles governing injunctive relief. As injunctive relief became more prevalent in unfair competition cases, a process began of adding provisions to that chapter which related only to unfair competition cases. As a result of this process there is now a body of statutory law dealing solely with the enforcement of unfair competition laws which is located in the wrong part of the codes. [¶] This bill transfers these provisions, without substantive change, from the Civil Code to a more appropriate location in the Business and Professions Code." (Assem. Com. on Judiciary, Digest of Assem. Bill No. 1280 (1977-1978 Reg. Sess.) May 19, 1977.)

Thus, we conclude the Legislature did not intend to overturn the long-established law governing equitable relief for violations of penal law when it amended Civil Code section 3369 in 1977. (See *City of San Jose*, *supra*, 49 Cal.4th at p. 606; *Brodie*, *supra*, 40 Cal.4th at p. 1325.) Rather, when it added the "except . . . as otherwise provided by law" exception, it maintained the rule that a taxpayer action will not lie to enforce a Penal Code provision.

Here, the trial court found that the City and its zoo director had violated Penal Code statutes proscribing animal abuse, but it provided them neither the right to a jury trial nor the standard of proof beyond a reasonable doubt. The considerations limiting the reach of equitable intervention stated long ago in *Lim*, *supra*, 18 Cal.2d at pages 880-881, were thereby contravened. So were the rules of *Landowitz*, *supra*, 20 Cal.2d at page 422, requiring penal provisions for injunctive relief to specify the prohibited conduct, and *Schur*, *supra*, 47 Cal.2d at pages 17-19, holding Code of Civil Procedure section 526a insufficient to support

18

an injunction against criminal activity.  Moreover, Leider was permitted to exercise the discretion reserved for the district attorney with regard to enforcement of the criminal law.  For these reasons, the Court of Appeal's judgment cannot stand.

## III.  DISPOSITION

We reverse the Court of Appeal's judgment, and remand for further proceedings consistent with the views expressed herein.

**CORRIGAN, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**WERDEGAR, J.**
**CHIN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Leider v. Lewis

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 243 Cal.App.4th 1078
**Rehearing Granted**

_____

**Opinion No.** S232622
**Date Filed:** May 25, 2017

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** John Segal

_____

**Counsel:**

Wasserman, Comden & Casselman, Casselman Law Group, David B. Casselman; Esner, Chang & Boyer and Stuart  B. Esner for Plaintiff and Appellant.

Linda Lye, Micaela Davis; Ahilan Arulanantham; and David Loy for ACLU of Northern California, ACLU of Southern California and ACLU of San Diego and Imperial Counties as Amici Curiae on behalf of Plaintiff and Appellant.

Bird, Marella, Boxer, Wolpert, Nessim, Drooks, Lincenberg & Rhow, Dorothy Wolpert and Kimberley M. Miller for Voice for the Animals, Melya Kaplan and Lily Tomlin as Amici Curiae on behalf of Plaintiff and Appellant.

Sullivan & Crowell, Diane L. McGimsey, Edward E. Johnson, Janet Y. Galeria, Jonathon D. Townsend; Winston & Strawn, Amanda C. Sommerfeld and Bennett J. Kaspar for Animal Legal Defense Fund as Amicus Curiae on behalf of Plaintiff and Appellant.

Zeynep J. Graves; The Bernheim Law Firm, Steven J. Bernheim and Nazo S. Semerjian for Last Chance for Animals as Amicus Curiae on behalf of Plaintiff and Appellant.

Michael N. Feuer, City Attorney, Laurie R. Henberg, Assistant City Attorney, John A. Carvalho, Deputy City Attorney; Karcher Harmes and Kathryn E. Karcher for Defendants and Appellants.

Duane Morris, Patricia P. Hollenbeck and Heather U. Guerena for Association of Zoos & Aquariums, San Diego Zoo Global, International Elephant Foundation, Phoenix Zoo, North Carolina Zoological Park, Saint Louis Zoo and Busch Gardens Tampa as Amici Curiae on behalf of Defendants and Appellants.

Colantuono, Highsmith & Whatley, Michael G. Colantuono and Leonard P. Aslanian for League of California Cities, International Municipal Lawyers Association and California State Association of Counties as Amici Curiae on behalf of Defendants and Appellants.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

David B. Casselman
Casselman Law Group
5567 Reseda Boulevard, Suite 330
Tarzana, CA  91356
(818) 609-2300

Linda Lye
American Civil Liberties Union Foundation of Northern California, Inc.
39 Drumm Street
San Francisco, CA  94111
(415) 621-2493

Kathryn E. Karcher
Karcher Harmes
401 B Street, Suite 2450
San Diego, CA  92101
(206) 335-1631