Filed 5/17/24  P. v. Corona CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ALONSO CORONA,<br><br>Defendant and Appellant. | F086509<br><br>(Kern Super. Ct. No. BF161200C)<br><br>**OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Kern County.  Elizabet Rodriguez, Judge.

Sylvia W. Beckham, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Lewis A. Martinez, Eric Christoffersen, and William K. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

In 2017, a jury convicted appellant and defendant Alonso Corona of first degree premeditated murder for the shooting death of Victor Anaya (Pen. Code, § 187, subd. (a);[1] count 1). The jury convicted defendant of attempted premeditated murder involving another victim, David Anaya,[2] stemming from the same incident (§§ 664, 187, subd. (a); count 2). The jury found true that defendant committed these crimes to benefit a criminal street gang (§ 186.22, subd. (b)(1)), and that, during these offenses, at least one principal intentionally and personally discharged and personally used a firearm that proximately caused great bodily injury or death (§ 12022.53, subds. (d), (e)(1)). The jury, however, did not find true that defendant personally inflicted great bodily injury upon David during the attempted murder.

Stemming from the same incident as counts 1 and 2, the jury convicted defendant of shooting at an inhabited dwelling (§ 246; count 3) and conspiracy to commit a crime (§ 182, subd. (a)(1); count 4). In these counts, the jury also found true gang enhancements (§ 186.22, subd. (b)(1)). In count 3 (shooting at an inhabited dwelling), the jury determined that at least one principal intentionally and personally discharged a firearm (§ 12022.53, subds. (c), (e)(1)). In count 4 (conspiracy), the jury determined that defendant used a firearm (§ 12022.5, subd. (a)). In 2017, defendant was sentenced to an aggregate prison term of 82 years to life.

We have issued three prior unpublished opinions in this matter.

### I.    The First Opinion

In 2019, we reversed the first degree murder conviction in count 1 because of prejudicial instructional error. We agreed with defendant it was possible the jury had

---

[1] All further undesignated statutory references are to the Penal Code unless otherwise noted.

[2] Because Victor and David share the same last name, we will refer to them by their first names to avoid confusion.

improperly relied on the natural and probable consequences doctrine to find him guilty in count 1 as an aider and abettor. We could not declare the error harmless beyond a reasonable doubt regarding a conviction for murder in the first degree. We modified the conviction in count 1 to second degree murder but gave the People the opportunity to retry the premeditation and deliberation allegation. In all other respects, we affirmed the judgment. (*People v. Corona* (Sept. 18, 2019, F075515), mod. Oct. 16, 2019 [nonpub. opn].)

On November 14, 2023, this court took judicial notice of the record of appeal in case No. F075515.

## II.     The Second Opinion

The California Supreme Court accepted review of the matter, and, on December 22, 2021, it directed us to vacate our first opinion and reconsider the cause in light of Senate Bill No. 775 (2020–2021 Reg. Sess.) (Stats. 2021, ch. 551) (Senate Bill 775).

On February 1, 2022, we vacated our first opinion and requested supplemental briefing from the parties. Following remand from the high court, the parties agreed that our original disposition in count 1 remained correct and the murder conviction should be reduced to second degree.[3] Regarding the attempted premeditated murder conviction in count 2, we agreed with defendant that reversal was required in light of Senate Bill 775. An accomplice may no longer be convicted of attempted murder based on the natural and probable consequences doctrine. (*People v. Sanchez* (2022) 75 Cal.App.5th 191, 196.) We could not declare beyond a reasonable doubt that the jury convicted defendant in count 2 based on a legally valid theory.

---

[3] At that time during his second appeal, defendant was represented by a different attorney than his current counsel of record.

3.

On April 26, 2022, we issued our second opinion. We again modified the conviction in count 1 to second degree murder but gave the People the opportunity to retry the premeditation and deliberation allegation. We reversed the conviction in count 2 (attempted premeditated murder) but gave the People the opportunity to retry this charge. In all other respects, we affirmed the judgment. (*People v. Corona* (April 26, 2022, F075515) [nonpub. opn.].)

## III. The Third Opinion

In 2022, this matter was remanded to the trial court. There, defendant raised Assembly Bill No. 333 (2021–2022 Reg. Sess.) (Assembly Bill 333), which went into effect on January 1, 2022. This altered the requirements to prove gang-related enhancements. Defendant also petitioned the trial court for resentencing (§ 1172.6), contending he could no longer be convicted of second degree murder in count 1 because the jury had been instructed on the natural and probable consequences doctrine. The trial court denied without prejudice the petition for resentencing. The court declined to take further action regarding Assembly Bill 333 or to relitigate the gang-related enhancements, believing the appellate court should rule whether Assembly Bill 333 applied in this matter.

The prosecution did not retry defendant. In February 2023, the trial court resentenced defendant to an aggregate indeterminate term of 40 years. This represented a sentence of 15 years to life for second degree murder (count 1), along with a consecutive 25 years to life for the firearm enhancement (§ 12022.53, subds. (d) & (e)(1)).

On January 10, 2024, we issued our third and most recent opinion. (*People v. Corona* (Jan. 10, 2024, F085821), mod. Jan. 18, 2024 [nonpub. opn.].) We agreed with respondent that defendant is entitled to the retroactive benefits of Assembly Bill 333, and the predicate offenses introduced in defendant's trial no longer satisfy the statutory requirements to establish gang-related enhancements (§ 186.22, subd. (b)(1)). We

4.

vacated defendant's sentence, and we reversed the jury's true findings regarding the gang-related enhancements (*ibid*.), including the firearm enhancements found true under section 12022.53, subdivision (e)(1). We gave the People an opportunity to retry these allegations. However, we rejected defendant's remaining arguments.

In rejecting defendant's remaining arguments, we reviewed the validity of his modified conviction for second degree murder in light of Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437). We held that reversal of the second degree murder conviction was unwarranted, and the trial court did not err in denying the petition for resentencing. Although the jury was instructed on the natural and probable consequences doctrine, we declared that this was harmless beyond a reasonable doubt regarding the modified conviction for second degree murder. The evidence overwhelmingly demonstrated that defendant held his own intent to kill, and malice was not imputed to him. All rational jurors who may have found defendant guilty based on that now invalid theory, and made the factual findings reflected in the verdict, would have unanimously found defendant guilty based on a valid theory. We remanded for further proceedings but otherwise affirmed the judgment, including the modified conviction for second degree murder. (*People v. Corona*, *supra*, F085821.)

On the court's own motion, we take judicial notice of the record of appeal in case No. F085821. (Evid. Code, § 452, subd. (d).)

After we issued our most recent opinion in case No. F085821, defendant filed a petition for review in the California Supreme Court. On March 21, 2024, our high court denied review and the remittitur issued.

## IV.    The Current Appeal

On February 28, 2023, the day defendant filed his prior appeal in case No. F085821, he also filed in the trial court a second petition for resentencing (§ 1172.6). The second petition is the subject of the present appeal.

On June 30, 2023, the trial court considered the petition. Based on our opinion filed in 2022, the trial court noted that "overwhelming evidence" demonstrated defendant's malice. Given this court's "prior orders," the trial court believed it was appropriate to dismiss the petition.

On July 7, 2023, defendant filed the present appeal. He contends the trial court abused its discretion in dismissing his second petition for resentencing.

## BACKGROUND

### I. The Shootings at the House Party

The events in question transpired at a house party in Kern County. Upwards of 75 to 100 people attended the party throughout the night and into the early morning hours of August 15, 2015. Defendant was a gang member when these events occurred. He belonged to a gang known as CSB, which stood for either Can't Stop Banging or Can't Stop Balling.

The prosecution established that defendant attended the house party. In addition to eyewitness testimony confirming defendant's presence, defendant's deoxyribonucleic acid (DNA) was located on an empty beer bottle recovered at that house after these events. Defendant arrived at the party around midnight with about 10 other CSB members. The group had not been invited to the party, but someone had received a text message about it. That night, defendant wore a white T-shirt and a blue "L.A." hat.

Jose Montoya attended the party with defendant. Montoya was the younger brother of defendant's girlfriend. Defendant referred to Montoya as his brother-in-law.

The trial evidence established that defendant was armed when he attended this party. A CSB gang member, Collin A., testified that he saw both defendant and Montoya each with handguns in the evening before this party started. Other witnesses saw defendant at the party in possession of a gun.

As the party began to wind down in the early morning hours, the CSB members were asked to leave. The situation became tense. Some of the CSB members appeared upset and they did not readily agree to leave. Eventually, the CSB group moved to the front yard.

In the front yard, more words were exchanged between the CSB group and the males escorting them out of the house. There were about 15 males all together. A CSB member said, "We're not going to leave until this gets resolved." Victor, the murder victim, initially tried to calm down the situation. A CSB member was heard saying, "You think we're not going to do anything?" A member in the CSB group also said something like, "I'm going to show you what I'm going to do." Defendant was present in the front yard when these exchanges occurred. As the situation became tense, a CSB gang member said, "We are just going to f[**]k these fools up." Defendant appeared mad. He said things like, "I don't give a f[**]k if this is your house." A fellow gang member told defendant something like, "[W]hatever you want to do, I'm with you." A fist fight ensued. During the fight, multiple witnesses heard two separate volleys of shots. The first volley involved two shots. The second volley occurred about a minute later, and it involved anywhere from three to five shots. The witnesses described two shooters, one wearing a white shirt and blue hat. The second shooter wore dark clothing. The shots originated from the CSB group.[4]

At trial, the prosecution established that defendant fired the first volley of two shots. David, the victim of the attempted murder, testified that he saw defendant draw a black handgun, point it at Victor, and fire two shots. David ran at defendant and began wrestling him for the gun. They ended up wrestling on the hood of a car. While they struggled, defendant slid his weapon across the hood to another person. David eventually

---

[4] Neither Victor nor David, the two shooting victims, were armed when these events occurred.

broke free and ran towards the house. David reached the front door and, as he opened it, he heard multiple shots. He was struck once in his mid-back. David woke in the hospital. While hospitalized, he spoke with detectives. He identified defendant in a photographic lineup as the person who fired two shots at Victor. David was 70 percent certain of his selection when he made it. At trial, David identified defendant as the suspect who shot twice at Victor. He said that Victor's shooter had worn a white shirt and a blue hat.

Another witness, J.L., saw a CSB member push Victor, who pushed back. The CSB member drew a firearm from his waistband, and Victor began struggling with this person over the firearm. J.L. heard two shots, but he did not see who fired those shots. After these events, J.L. selected defendant's photograph as the person he saw draw a firearm and struggle with Victor. At the time he made this selection, J.L. was 75 percent certain. At trial, however, J.L. said he did not recognize defendant in court.

A fellow gang member, Alvarado, testified that he was involved in the fight. During the brawl, he heard two shots fired. He then saw defendant running away with a "pistol."

## II. Law Enforcement's Investigation

Police officers were dispatched to the house party at about 2:12 a.m. on August 15, 2015. Victor suffered two gunshot wounds. One shot went through his torso but did not pierce any vital organs. The other bullet pierced an artery, which caused death within minutes due to internal hemorrhaging.

David underwent surgery and he was hospitalized for multiple weeks. At the time of his trial testimony, he was still disabled.

Fresh bullet strikes were found on vehicles parked in front of the residence. Bullet strikes were also seen near the residence's front door, and on its wall. At trial, a police sergeant opined that the multiple shots had been fired from "two different positions."

Police recovered two 9-millimeter shell casings in the front yard. Later testing confirmed that the two 9-millimeter casings had been fired from the same weapon. In addition, fragments of a projectile were recovered from Victor's body during his autopsy. Testing suggested that the projectile removed from Victor's body came from a .38- or a .357- caliber firearm.

During its investigation, police learned from a source that defendant and Jose M. had been responsible for this shooting. This information had originated from defendant's brother. About four days after this shooting, an arrest warrant was issued for Jose for the charge of first degree murder.[5]

### III. The Defense Evidence

Defendant's mother and his girlfriend (the mother of his child) testified on his behalf. They collectively asserted that defendant was home with them on the night in question. Defendant's birthday was August 14, and they had stayed home to celebrate. They claimed that the following day, defendant was home in the morning, but he then disappeared.

The parties stipulated that defendant's fingerprints were not located at the shooting scene.

### DISCUSSION

### I. We Affirm the Trial Court's Dismissal of the Second Petition for Resentencing

Before analyzing the merits of defendant's current claim, we summarize the procedural history below regarding the second petition for resentencing. This is relevant to an issue respondent raises.

---

[5] Jose M. was not a party in this prosecution.

9.

### A.       *Procedural History*

On February 28, 2023, defendant filed his prior appeal in case No. F085821.  That same day, defendant also filed in the trial court his second petition for resentencing (§ 1172.6), which is the subject of this present appeal.

The trial court dismissed the second petition on June 30, 2023.

Defendant filed this present appeal on July 7, 2023.

On September 26, 2023, defendant filed an "Application" in this court seeking an order regarding whether he could proceed with this appeal.  Defendant acknowledged that his appeal in case No. F085821 was then pending before this court, and that prior appeal involved the alleged erroneous denial of his first petition for resentencing.

On October 11, 2023, this court issued an order indicating it was considering dismissing this appeal for lack of appellate jurisdiction because it appeared the substance of this matter was being considered in case No. F085821.  We invited defendant to submit a letter brief with citation to appropriate legal authority establishing a statutory basis to appeal from the June 30, 2023, order dismissing his second petition.  Briefing was stayed pending further order of this court.

On October 20, 2023, defendant filed a letter brief which did not provide any additional authorities.  Defendant stated the matter was submitted for decision.

On November 7, 2023, this court "made a preliminary determination" this matter was reviewable on appeal.  However, we did not make "any determination as to the merits of the appeal."  We directed defendant to file his opening brief.

### B.       *The Trial Court Had Jurisdiction to Dismiss the Second Petition*

After a defendant appeals, a trial court generally lacks jurisdiction to issue an order impacting that criminal judgment.  (*People v. Wagner* (2009) 45 Cal.4th 1039, 1061; *Anderson v. Superior Court of Solano County* (1967) 66 Cal.2d 863, 865.)  Based on that rule, respondent contends, in part, that the trial court lacked jurisdiction to address the second petition for resentencing.  According to respondent, defendant's judgment was

already under appeal in case No. F085821 when the lower court considered the second petition. Respondent asserts that the trial court's order dismissing the second petition is void for lack of jurisdiction. Respondent urges us to resolve this claim on that basis. We disagree.

A trial court retains jurisdiction to dismiss a petition for resentencing even after an appeal has been filed. (See *People v. Cress* (2023) 87 Cal.App.5th 421, 424.) Dismissing a petition for resentencing does not affect the judgment and it does not disturb the status quo. (*Ibid*.)

Here, the trial court dismissed defendant's second petition for resentencing on June 30, 2023. The dismissal in the lower court occurred after the appeal had already commenced in case No. F085821. However, the court's order dismissing the petition neither impacted defendant's judgment nor disturbed the status quo. Accordingly, no jurisdictional infirmity exists. (See *People v. Cress, supra,* 87 Cal.App.5th at p. 424.) Therefore, we deny respondent's request to vacate the June 30, 2023, order for lack of jurisdiction.

C.    ***Based on the Law of the Case Doctrine, We Affirm the Trial Court's Order Dismissing the Second Petition for Resentencing***

Defendant asserts the trial court abused its discretion in dismissing his second petition for resentencing. He maintains his petition was facially valid so the prosecutor must establish beyond a reasonable doubt that his modified conviction for second degree murder is valid under current law. He contends that this court's prior opinion does not obviate his statutory right to present new evidence in the superior court regarding his murder conviction (see § 1172.6, subd. (d)(3)).

We reject defendant's various arguments in this appeal because we have already ruled on the validity of his modified conviction for second degree murder, including a full analysis on the applicability of Senate Bill 1437. In our most recent opinion, we stated it was unknown who delivered the fatal shots that resulted in Victor's death. Either

11.

defendant shot him twice, or Jose M. shot him twice, or they each shot Victor once. However, we held that the record overwhelmingly demonstrated beyond a reasonable doubt that defendant's conduct was a substantial factor in Victor's death.[6]  It was defendant who initiated the physical confrontation with Victor.  It was defendant who initially aimed a handgun at Victor and fired two shots.  Although it is impossible to determine who delivered the fatal shots in this matter, i.e., direct or actual causation cannot be established, that does not undermine the validity of defendant's murder conviction.  Instead, the evidence demonstrates beyond a reasonable doubt that defendant's conduct was, at a minimum, a substantial concurrent cause of Victor's death. Accordingly, we held in our prior opinion that it was appropriate to hold defendant liable for murder.  (*People v. Corona, supra,* F085821.)

In our prior opinion, we held that all rational jurors who may have found defendant guilty based on a now invalid theory, and made the factual findings reflected in the verdict, would have unanimously found defendant guilty of second degree murder based on a valid theory.  No juror could have had reasonable doubt regarding the findings necessary to convict defendant on a valid theory.  (See *In re Lopez* (2023) 14 Cal.5th 562, 568.)  Therefore, we rejected defendant's assertions that his second degree murder conviction must be reversed or that the trial court erred in denying his first petition for resentencing.  We likewise concluded there was no reasonable probability defendant

---

[6] A defendant's liability for murder is determined by his own malice along with proximate causation – not direct or actual causation.  (*People v. Carney* (2023) 14 Cal.5th 1130, 1137; *People v. Sanchez* (2001) 26 Cal.4th 834, 845.)  When it is impossible to determine who fired a fatal shot, i.e., when direct or actual causation cannot be established, that does not undermine the validity of a murder conviction if it is shown beyond a reasonable doubt that the defendant's conduct was a substantial concurrent cause of the victim's death.  (*People v. Sanchez,* at p. 845.)  Senate Bill 1437 does not impact this rule because proximate causation does not concern the imputed malice theory of criminal liability that is part of the natural and probable consequences doctrine. (*People v. Carney*, at pp. 1145–1146.)

would obtain a more favorable result if this matter were remanded for further proceedings regarding his petition for resentencing. (See *People v. Watson* (1956) 46 Cal.2d 818, 836 [articulating standard of review for prejudice involving error of state law].) In addition, and to the extent a federal constitutional issue exists, we declared beyond a reasonable doubt that the denial of the petition at the prima facie stage was harmless. (See *Chapman v. California* (1967) 386 U.S. 18, 24 [articulating standard of review for prejudice involving error under federal Constitution].) (*People v. Corona, supra,* F085821.)

After we issued our prior opinion in case No. F085821, defendant filed a petition for review in the California Supreme Court. On March 21, 2024, our high court denied review of our prior opinion and the remittitur issued.

When an appellate court "states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout its subsequent progress, both in the lower court and upon subsequent appeal." (*Tally v. Ganahl* (1907) 151 Cal. 418, 421; accord *People v. Turner* (2004) 34 Cal.4th 406, 417.) Like res judicata, the doctrine of the law of the case promotes finality of litigation and judicial economy by preventing a party from relitigating questions previously decided by a reviewing court. (*People v. Gray* (2005) 37 Cal.4th 168, 196; *George Arakelian Farms, Inc. v. Agricultural Labor Relations Bd.* (1989) 49 Cal.3d 1279, 1291.) An appellate court will not review matters determined in a prior appeal of the same case. (*Leider v. Lewis* (2017) 2 Cal.5th 1121, 1127.)

The law of the case doctrine applies here. The legal holdings stated in case No. F085821 must be followed throughout the duration of this matter. As such, we will affirm the trial court's order dismissing the second petition for resentencing.

Defendant contends that the law of the case doctrine is inapplicable here. He argues our most recent opinion merely found "sufficient evidence to support a murder conviction." As such, he maintains that our prior opinion cannot "defeat" his second petition for resentencing at the prima facie stage. He contends that further proceedings

13.

are statutorily required under section 1172.6. He relies on *People v. Medrano* (2024) 98 Cal.App.5th 1254 (*Medrano*) and *People v. Harden* (2022) 81 Cal.App.5th 45 (*Harden*).

In general, *Medrano* and *Harden* establish that a trial court may not rely on an earlier appellate opinion to deny a petition for resentencing at the prima facie stage when that earlier opinion analyzed the sufficiency of the trial evidence. (*Medrano, supra,* 98 Cal.App.5th at p. 1264.) The law of the case doctrine is inapplicable in such a situation because additional evidence could alter the petitioner's liability for murder under the new law. (*Ibid.*; see also *Harden, supra,* 81 Cal.App.5th at p. 50 [law of the case doctrine does not apply if evidence is materially different at a subsequent evidentiary hearing].)

Defendant's reliance on *Medrano* and *Harden* is misplaced. Those opinions are distinguishable from the present matter. In case No. F085821, we did not analyze whether sufficient trial evidence supported defendant's modified conviction for second degree murder. To the contrary, we considered the entirety of the record to determine whether defendant's modified conviction for second degree murder was legally valid under current law in light of Senate Bill 1437. We specifically noted we had jurisdiction to address that issue, at least in part, under section 1172.6, subdivision (g).[7] (*People v. Corona, supra,* F085821.) We held that, as a matter of law, defendant's murder conviction remains valid. We also held that a remand was not warranted for further proceedings under section 1172.6. (*Ibid.*) Our high court denied defendant's petition for review.

Based on the analysis and disposition in case No. F085821, defendant's present appeal is meritless. We will neither continue to analyze the validity of defendant's

---

[7] A person convicted of murder whose conviction is not final may challenge on direct appeal the validity of that conviction based on the changes made to sections 188 and 189 by Senate Bill 1437. (See § 1172.6, subd. (g).)

modified murder conviction nor remand this matter for further proceedings.[8] As applied to defendant, any retroactive error from the changes brought by Senate Bill 1437 "is harmless beyond a reasonable doubt." (See *People v. Wilson* (2023) 14 Cal.5th 839, 875 [denying claim on direct appeal under section 1172.6, subd. (g)].) Defendant is ineligible for relief as a matter of law.

Finally, we need not respond to defendant's various arguments in this appeal regarding how and why the lower court allegedly abused its discretion in dismissing the second petition for resentencing. Even if the trial court dismissed the petition for allegedly flawed reasons, the outcome of that dismissal is correct. Accordingly, we affirm the lower court's ruling. (See *People v. Turner* (2020) 10 Cal.5th 786, 807 [regardless of the reasons given, a correct ruling will not be disturbed on appeal].) A remand for further proceedings is denied.

## DISPOSITION

The trial court's June 30, 2023, order dismissing the petition for resentencing is affirmed.

POOCHIGIAN, J.

WE CONCUR:


LEVY, Acting P. J.


MEEHAN, J.

---

[8] In part, respondent asks us to reject defendant's appeal based on collateral estoppel, i.e., issue preclusion. We decline to do so. Collateral estoppel is inapplicable here because that doctrine gives preclusive effect to prior findings of fact. (See *People v. Curiel* (2023) 15 Cal.5th 433, 451–452.) In contrast, the law of the case doctrine applies here stemming from our prior rulings in case No. F085821.