Filed 3/16/22  P. v. Sabados CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DONALD LEON SABADOS,<br><br>    Defendant and Appellant. | B309631<br><br>(Los Angeles County<br>Super. Ct. No. A563249-01) |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County, Suzette Clover, Judge.  Reversed and remanded with directions.

John P. Dwyer, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Daniel C. Chang and William H. Shin, Deputy Attorneys General, for Plaintiff and Respondent.

Donald Leon Sabados pleaded guilty in 1983 to first degree murder based on his participation in a robbery and burglary during which the victim died of a heart attack.  In response to his petition for a writ of habeas corpus in 1991, Sabados's offense was modified to second degree murder and his sentence reduced from 25 years to life to 15 years to life.  In November 2020 the superior court denied Sabados's petition for resentencing pursuant to Penal Code section 1170.95[1] without holding an evidentiary hearing, finding Sabados had failed to make a prima facie case for relief because the facts in the record of conviction established he could still be found guilty of first degree murder pursuant to section 189, subdivision (e)(1) and (3), as amended by Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) (Senate Bill 1437).

Sabados contends on appeal, and the Attorney General agrees, that the superior court engaged in impermissible factfinding to conclude Sabados had not made a prima facie case for relief.  However, the Attorney General argues the error was harmless because the record established Sabados was the actual killer and, as such, ineligible for relief as a matter of law.[2]  We

---

[1]     Statutory references are to this code.

[2]     The right to a postconviction proceeding for possible resentencing pursuant to section 1170.95 is purely a creation of state law.  We evaluate nonstructural state law error under the harmlessness standard set forth in *People v. Watson* (1956) 46 Cal.2d 818.  (*People v. Gonzalez* (2018) 5 Cal.5th 186, 195.) That standard requires us to evaluate whether the petitioner has demonstrated that it is ""reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error."" (*Ibid.*)

disagree that the record conclusively shows Sabados, and not his confederate Michael Baker, was the actual killer. Accordingly, we reverse the order denying Sabados's petition and remand with directions to issue an order to show cause and to conduct further proceedings in accordance with section 1170.95, subdivision (d).

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Sabados's Felony-murder Conviction*

Sabados, who was 18 years old at the time of the commitment offense, was charged in an information filed on October 13, 1982 with one count of murder (§ 187, subd. (a)) with a felony-murder special-circumstance allegation (§ 190.2, subd. (a)(17)), one count of robbery (§ 211) and one count of burglary (§ 459). Pursuant to a negotiated agreement Sabados pleaded guilty to first degree murder and was sentenced to an indeterminate state prison term of 25 years to life. The additional robbery and burglary counts and the special-circumstance allegation were dismissed.

In response to questions from the prosecutor at the plea hearing, Sabados admitted he and Baker knew the victim and went to his home to obtain money during a nighttime burglary. Sabados then agreed with the following recitation of the events of that evening: "[I]t was planned out by the two of you that when you entered the house, that according to a pre-plan you had, you were going to tie up the victim so he couldn't get the shotgun or any weapon he'd use against you . . . . The two of you broke in the house together, you tied up Mr. Johnson and apparently, you held him down, and there was some struggling while Mr. Johnson was resisting you and Mr. Baker being inside the house . . . . [W]hat you told the police officers, you believe he probably had a heart attack during the while [*sic*] he was

3

struggling with you and he stopped struggling . . . while you were holding him down . . . . You had no intention to harm the old man in any way, you were just attempting to hold him down so you and Mr. Baker could accomplish the crime of burglary you had gone to the house for . . . . And other than the force used to hold Mr. Johnson down, you used no other force that would bring about the heart attack . . . ."

Sabados's conviction and sentence were affirmed by Division Three of this court, which rejected Sabados's argument the trial court had erred in finding he had voluntarily consented to a search of his residence and, because Sabados had pleaded guilty to first degree murder after being informed of the sentence and failed to obtain a certificate of probable cause, declined to consider the argument his sentence of 25 years to life constituted cruel or unusual punishment. (*People v. Sabados* (1984) 160 Cal.App.3d 691.)

In March 1991 after Sabados filed a petition for a writ of habeas corpus, the superior court granted the district attorney's motion to reduce Sabados's offense to second degree murder and resentenced Sabados to an indeterminate state prison term of 15 years to life. Sabados agreed not to pursue further appeals.

2. *Sabados's Petition for Resentencing*

On May 6, 2019 Sabados, representing himself, filed a petition for resentencing under section 1170.95 and requested the court appoint counsel to represent him in the resentencing proceedings. In his petition Sabados asserted he could not now be convicted of first or second degree murder because of changes made to sections 188 and 189 by Senate Bill 1437 and specifically averred, "I was not the actual killer. The victim died from coronary arteriosclerosis."

4

The court appointed counsel to represent Sabados. Both the prosecutor and Sabados's counsel filed briefs. The district attorney's brief attached transcripts of Sabados's preliminary hearing and his plea and sentencing hearings.

The court heard argument from counsel on November 20, 2020. During a detailed discussion of the facts of the crime as described in testimony at the preliminary hearing, Sabados's plea admissions and information in his probation report, the superior court observed, "I don't think there is any question that Mr. Sabados is an active participant with a reckless disregard for human life." Shortly thereafter, after acknowledging that there was no intent to kill, the court stated, "It seems to me that this is without question second degree implied malice murder." After the prosecutor indicated a finding of that nature should be made only after an evidentiary hearing, the court stated, "I don't think there is any question at all that this is second degree implied malice murder. However, for purposes of this motion, I do believe, that Mr. Sabados, under the present state of the law, could be found guilty of first degree premeditated murder pursuant to sections 189(e)(1) and (3)."[3]

Sabados filed a timely notice of appeal.

---

[3] The reporter's transcript records the court as originally identifying section 189, subdivision (e)(1) and (2). When the prosecutor inquired, the court clarified, "No. I said (1) and (3). 189(e)(1) and (3)." In his opening brief Sabados suggests the court intended to say "first degree felony murder," rather than "first degree premeditated murder."

## DISCUSSION

1. *Senate Bill 1437 and the Section 1170.95 Petition Procedure*

Senate Bill 1437 substantially modified the law relating to accomplice liability for murder, eliminating the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*People v. Gentile* (2020) 10 Cal.5th 830, 842-843 (*Gentile*)) and significantly narrowing the felony-murder exception to the malice requirement for murder. (§§ 188, subd. (a)(3), 189, subd. (e); see *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).)[4] It also authorized, through new section 1170.95, an individual convicted of felony murder or murder based on the natural and probable consequences doctrine to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not have been convicted of murder because of Senate Bill 1437's changes to the definition of the crime. (See *Lewis*, at p. 957; *Gentile*, at p. 843.)

If the section 1170.95 petition contains all the required information, including a declaration by the petitioner that he or she is eligible for relief (§ 1170.95, subd. (b)(1)(A)), the court must appoint counsel to represent the petitioner, if requested (§ 1170.95, subd. (b)(3))[5] and direct the prosecutor to file a

---

[4]     As amended by Senate Bill No. 775 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 551, § 2), effective January 1, 2022, the ameliorative provisions of Senate Bill 1437 now also apply to attempted murder and voluntary manslaughter.

[5]     Prior to enactment of Senate Bill No. 775 the requirement to appoint counsel was set forth in subdivision (c) of section 1170.95.

6

response to the petition, permit the petitioner to file a reply and determine if the petitioner has made a prima facie showing that he or she is entitled to relief.  (§ 1170.95, subd. (c); see *Lewis*, *supra*, 11 Cal.5th at pp. 962-963.)

In determining whether the petitioner has carried the burden of making the requisite prima facie showing he or she falls within the provisions of section 1170.95 and is entitled to relief, the superior court properly examines the record of conviction, "allowing the court to distinguish petitions with potential merit from those that are clearly meritless."  (*Lewis*, *supra*, 11 Cal.5th at p. 971.)  However, "the prima facie inquiry under subdivision (c) is limited.  Like the analogous prima facie inquiry in habeas corpus proceedings, the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause. . . .  However, if the record, including the court's own documents, contain[s] facts refuting the allegations made in the petition, then the court is justified in making a credibility determination adverse to the petitioner."  (*Id*. at pp. 970-971, internal quotation marks omitted.)

If the section 1170.95, subdivision (c), prima facie showing has been made, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts.  (§ 1170.95, subd. (d)(1).)  At the hearing the prosecution has the burden of proving, "beyond a reasonable doubt, that the petitioner is guilty of murder . . . under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019."  (§ 1170.95, subd. (d)(3), as amended

7

by Senate Bill No. 775 (Stats. 2021, ch. 551, § 2), effective January 1, 2022.)[6] The prosecutor and petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens. (See *Gentile*, *supra*, 10 Cal.5th at pp. 853-854.)

### 2. *Section 189, Subdivision (e), and the Narrowed Felony-murder Rule*

At the time of Sabados's plea in 1983, section 189 permitted a conviction for felony murder by imputing malice to a participant in an inherently dangerous felony, including robbery and burglary, that resulted in a homicide. (See *People v. Chun* (2009) 45 Cal.4th 1172, 1184.) As amended by Senate Bill 1437, section 188, subdivision (a)(3), now prohibits imputing malice based solely on an individual's participation in a crime and requires proof of malice to convict a principal of murder except under the revised felony-murder rule as set forth in section 189, subdivision (e). That provision requires the People to prove specific facts relating to the defendant's individual culpability: The defendant was the actual killer (§ 189, subd. (e)(1)); although not the actual killer, the defendant, with the intent to kill, assisted in the commission of the murder (§ 189, subd. (e)(2)); or the defendant was a major participant in an underlying felony listed in section 189, subdivision (a), and acted with reckless indifference to human life, "as described in subdivision (d) of

---

[6] Senate Bill No. 775 also amended section 1170.95, subdivision (d)(3), to clarify that "[a] finding that there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing."

8

Section 190.2," the felony-murder special-circumstance provision (§ 189, subd. (e)(3)).

   3. *The Superior Court Committed Prejudicial Error in Denying Sabados's Petition Without Issuing an Order To Show Cause*

Sabados argues on appeal the superior court engaged in impermissible factfinding at the prima facie stage when it concluded, after reviewing the preliminary hearing testimony and transcripts from Sabados's plea and sentencing hearings, that he had been a major participant in the underlying robbery and burglary who acted with reckless indifference to human life and, therefore, was ineligible for resentencing relief. (See *Lewis*, *supra*, 11 Cal.5th at p. 974 ["at the prima facie stage, a petitioner's allegations should be accepted as true, and the court should not make credibility determinations or engage in 'factfinding involving the weighing of evidence or the exercise of discretion'"].) The Attorney General agrees the court's evaluation of the evidence should have been reserved for an evidentiary hearing conducted pursuant to section 1170.95, subdivision (d)(3).

   Nonetheless, the Attorney General contends the superior court's error was harmless because the record of conviction shows as a matter of law that Sabados was an actual killer and thus remains liable for Johnson's death under the amended felony-murder rule as set forth in section 189, subdivision (e)(1). (See *Lewis*, *supra*, 11 Cal.5th at p. 974 ["a petitioner 'whose petition is denied before an order to show cause issues has the burden of showing "it is reasonably probable that if [not for the superior court's error] his [or her] petition would not have been summarily denied without an evidentiary hearing"'"]; *People v. Mancilla* (2021) 67 Cal.App.5th 854, 859 ["[b]ecause the record of conviction establishes Mancilla is ineligible for resentencing as a

matter of law, any errors committed by the superior court [during the prima facie stage] were harmless"].)

The Attorney General's position requires consideration of two related questions: What does it mean to be the "actual killer" for purposes of section 189, subdivision (e)(1), of the revised felony-murder rule? Given that definition, does the evidence in the record of Sabados's role in the robbery and burglary conclusively establish Sabados was an actual killer?

In many cases, of course, the answer to the first question is clear. The shooter who fired a gun during a robbery and accidentally killed the robbery victim or a bystander is the actual killer notwithstanding the absence of an intent to kill. (See *People v. Jennings* (1988) 46 Cal.3d 963, 979 ["[a] felony-murder special circumstance is established even absent intent to kill, premeditation, or deliberation, if there is proof beyond a reasonable doubt that the defendant personally killed the victim in the commission or attempted commission of, and in furtherance of, one of the felonies enumerated in subdivision (a)(17) of section 190.2"]; *People v. Garcia* (2020) 46 Cal.App.5th 123, 152 ["[t]he actual killer is the person who personally kills the victim, whether by shooting, stabbing, or—in this case—taping his mouth closed, resulting in death by asphyxiation"].) It was this concept the Legislature sought to include in Senate Bill 1437's revision of the law of accomplice liability for murder. (See Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading of Sen. Bill No. 1437 (2017-2018 Reg. Sess.) as amended May 25, 2018, p. 1 ["[t]his bill revises the felony murder rule to prohibit a participant in the commission or attempted commission of a felony that has been determined as inherently dangerous to human life to be imputed to have acted

10

with implied malice, unless he or she personally committed the homicidal act"]; Sen. Com. on Public Safety, Rep. on Sen. Bill No. 1437 (2017-2018 Reg. Sess.) as introduced Feb. 16, 2018, p. 2 ["[t]he purpose of this bill is to revise the felony murder rule to prohibit a participant in the commission or attempted commission of a felony that has been determined as inherently dangerous to human life to be imputed to have acted with implied malice, unless he or she personally committed the homicidal act"]; see also Assem. Com. on Public Safety, Rep. on Sen. Bill No. 1437 (2017-2018 Reg. Sess.) as amended May 25, 2018, pp. 5-6 ["[u]nder the provisions of this bill, an individual would not be liable for 2nd [degree] murder under a theory of felony murder unless the individual personally committed the act that resulted in death"].)

Simply being a proximate cause of the victim's death, however—for example, handing the murder weapon to the individual who directly inflicts the fatal blow—would generally not be sufficient to be considered the "actual killer." (See *People v. Garcia, supra*, 46 Cal.App.5th at pp. 152-153; cf. *People v. Bland* (2002) 28 Cal.4th 313, 336 ["[p]roximately causing and personally inflicting harm are two different things"].) If several perpetrators commit a robbery in the presence of a victim with a serious preexisting heart condition, as here, and the victim suffers a fatal, stress-related heart attack as a result, their actions surely can be considered the proximate cause of the victim's death. But did they each personally commit the act that resulted in death? Did any of them?

The Attorney General attempts to avoid this definitional complexity by pointing to Sabados's plea admissions and arguing, "The record of conviction conclusively shows appellant personally

11

killed the victim by holding him down until he stopped struggling." The record of conviction is not nearly so clear.

The coroner who testified at the preliminary hearing explained Johnson had "moderately severe" thickening and narrowing of the major coronary vessels and described the cause of death as "cardiac insufficiency due to coronary atherosclerosis." She did not opine that Johnson suffered his heart attack as a result of being held down. Rather, during her direct examination she testified generally he died "as a result of being put underneath the stresses of that particular burglary." On cross-examination, when asked how she evaluated the stress placed on the victim, the coroner identified the "ligatures"—the ropes that had been used to bind Johnson—explaining, "I know that if somebody placed ligatures on me that I would find it a very stressful situation."[7] And then on redirect examination the prosecutor asked, "It is your opinion that stressful situation caused by his being tied up is what caused his death?" And the coroner answered, "Yes."

The record of conviction indicates it was Baker, not Sabados, who used ropes to bind Johnson during the burglary. Moreover, according to the statement Sabados gave police officers that was read at his preliminary hearing, although Sabados initially held his hand over Johnson's mouth and eyes while Baker searched for valuables,[8] the two men then switched places,

---

[7]    In a follow-up question defense counsel asked, "You are assuming from the ligatures that there had to have been stress, a stressful situation; is that what you are saying?" The coroner responded, "Yes, I am."

[8]    Sabados and Baker had intended to use torn strips from a pillowcase to blindfold and gag Johnson, but instead, given his

12

with Baker holding Johnson while Sabados looked for items to take.  And it was Baker who went through Johnson's pockets and took rings from Johnson's hands while Johnson was restrained.  Finally, according to Sabados's statement, he checked Johnson's pulse before the men left the house, and Johnson was still alive at that point.  The coroner confirmed Johnson's death may have occurred sometime after the burglars left the house.  Thus, while it may be, as Sabados apparently believed, that Johnson's heart attack occurred while Sabados was holding him, it is far from certain it was Sabados's actions that directly precipitated the "cardiac insufficiency."

The Attorney General barely acknowledges this information, which belies his assertion the record before the superior court established, as a matter of law, that Sabados personally killed Johnson.  Instead, the Attorney General emphasizes a footnote in the opinion on Sabados's direct appeal that stated Sabados had admitted when entering his guilty plea that "Johnson had a heart attack while appellant held him." (*People v. Sabados*, *supra*, 160 Cal.App.3d at p. 693, fn. 2.)  That statement, the Attorney General insists, "constitutes the 'law of the case' and precludes appellant's assertion that he may not have been the actual killer."  It does neither.  Although the Supreme Court in *Lewis* held the superior court may look at the record of conviction to determine whether a petitioner has made a prima facie case for section 1170.95 relief and appellate opinions are generally considered part of the record of conviction (*Lewis*, *supra*, 11 Cal.5th at pp. 971-972), the Court did not hold factual

struggling, ended up holding their hands over his eyes and mouth to keep him quiet.

13

statements in those opinions have preclusive effect.[9]  To the contrary, the Supreme Court cautioned, "[T]he probative value of an appellate opinion is case specific, and 'it is certainly correct that an appellate opinion might not supply all answers.'" (*Id.* at p. 972; see *People v. Woodell* (1998) 17 Cal.4th 448, 457 ["If the appellate court did state the pertinent facts, a trier of fact is entitled to find that those statements accurately reflect the trial record. . . . [T]he defendant, who suffered the conviction and took the appeal, would know of and be able to challenge any material flaws or omissions in the opinion"].)

Here, it is apparent our colleagues in Division Three overstated Sabados's admission in their footnote, and their erroneous comment does not supply the answer the Attorney General desires.  As discussed, Sabados admitted only that he told police officers he "believe[d]" Johnson "probably" had a heart attack while struggling with Sabados.  The superior court, properly acting as a fact finder at a section 1170.95, subdivision (d)(3), hearing, may ultimately conclude the evidence, including Sabados's admission, establishes that Sabados personally killed Johnson.  But Sabados's rather equivocal statement of belief as to

---

[9]      Whatever probative value factual statements in appellate opinions may have in section 1170.95 proceedings, it is not due to the doctrine of law of the case.  Under that doctrine a decision of an appellate court stating a rule of law necessary to the decision of the case conclusively establishes the rule and makes it determinative of the rights of the same parties in any subsequent retrial or appeal in the same case.  (*Leider v. Lewis* (2017) 2 Cal.5th 1121, 1127.)  "As its name suggests, the doctrine applies only to an appellate court's decision on a question of law; it does not apply to questions of fact." (*People v. Barragan* (2004) 32 Cal.4th 236, 246.)

14

when Johnson had the heart attack, particularly when considered with the coroner's opinion that it was being tied up (by Baker) that was the primary stressor, does not indisputably establish Sabados is ineligible for resentencing relief.

It is true, as the Attorney General argues, there could be two actual killers within the meaning of section 189, subdivision (e)(1), and it is possible both Sabados's and Baker's actions during the burglary could be properly characterized as personally causing Johnson's death. It is also true the evidence presented after issuance of an order to show cause may justify the superior court's premature determination that Sabados is guilty under current law of implied malice murder or felony murder as a major participant in the underlying crimes who acted with reckless indifference to human life. But any such findings may be made only after an evidentiary hearing as required by section 1170.95, subdivision (d)(3).

## DISPOSITION

The postjudgment order denying Sabados's section 1170.95 petition is reversed. On remand the superior court is to issue an order to show cause and to conduct further proceedings in accordance with section 1170.95, subdivision (d).


PERLUSS, P. J.

We concur:


SEGAL, J.          FEUER, J.

15